## The City of Detroit v. William Blackeby and Hannah Blackeby.

*Municipal Corporations.* Charters to municipal corporations in this State are not contracts ; and they are subject to be amended at the pleasure of the Legislature. They create governmental agencies. They are not grants of privileges which cannot be taken away ; and they possess no powers not conferred by the acts creating them.

*Officers of Municipal Corporations.* Municipal officers are in no such sense municipal agents, that their negligence is the neglect of the municipality ; nor will their misconduct be chargeable against it, unless the act complained of be either authorized or ratified.

*City streets : Liability for defective condition.* The streets of Detroit are public highways like all other roads. The duty of keeping them in repair is a duty to the public, not to private individuals ; the mere neglect of which is a nonfeasance only, and for an injury resulting from such neglect no action arises. In this respect there is no distinction between the liability of cities and that of towns and counties.

*Heard May 4, 5. Decided July 7.*

Error to Wayne Circuit.

This was an action on the case brought in the Circuit Court for the county of Wayne, by William Blackeby and Hannah Blackeby, against the city of Detroit, for an injury to Mrs. Blackeby, occasioned by a defective crosswalk.

The defendant pleaded the general issue.

The bill of exceptions states that the plaintiffs' evidence

DETROIT v. BLACKEBY.

tended to show the following facts, viz: That the plaintiffs were husband and wife; that on the thirteenth day of December, 1868, the plaintiff, Hannah Blackeby, who is about sixty years of age, was passing along Michigan avenue, in the city of Detroit, on the southerly side of the avenue, and that upon the crosswalk across Ninth street she stepped into a hole in said walk and tripped and fell, breaking her arm in two places, and otherwise seriously injuring herself; said crosswalk was in a very dilapidated and dangerous condition, three of the six planks being gone, leaving a hole, or holes, there, from six to twelve inches deep, with sleepers running crosswise of the walk; that this cross-walk had been thus out of repair from July or August, 1868; that at the time of the accident, these holes were filled with loose snow, which had drifted into them on that day, so that upon the surface it appeared to be level, the planks and holes being covered with snow; that the walk had been broken and torn up during the paving of Michigan avenue, in July 1868, and had been notoriously out of repair from that time to the time of the accident.

The Circuit Judge charged the Jury as follows:

*Gentlemen of the Jury*:—This case, gentlemen, has some questions of law in it, and also questions of fact. The question of law is, whether the city is liable at all or not; the question of fact, if it is liable, as to what amount. The fact of injury is not disputed; the fact that the party in the case has been injured is admitted on both sides, so that you will have no difficulty with that. But the question whether the city is liable or not is a question of law for the Court, and with that you have nothing to do, except to receive the law as given you by the Court. But the question of the amount of damages that the party is entitled to receive, if any, is entirely and only a question

of fact for you; with that the Court has nothing to do. It will be for you to determine, under the circumstances and the law of the case, what the party is entitled to receive; it will be your duty to do that without regard to the effect, without regard to the parties, without regard to anything but the mere facts of the case, and the law of the case as given to you by the Court. It is entirely immaterial what has been the verdict on a former trial. The object of your being here to-day is to try the case yourself, and as the points are fully set forth in the requests to charge by the defendant, I will comment upon these.

Here the said Circuit Judge read, in their order, fourteen written requests of the counsel for the defendant to charge the jury, and commented upon them severally as follows, viz:

1. "That the jury cannot, upon the whole evidence in the case, render a verdict for the plaintiffs." *By the Court.* —That is refused.

2. "That if the snow upon the walk was the immediate cause of the injury, and the jury find that but for the snow on the walk the injury would not have occurred, then the plaintiffs cannot recover." *By the Court.*—That is refused, as requested. If you find that the walk was in good repair, and that in consequence of the snow, or that the city had not had proper notice, the injury happened, that would be one thing; but if you shall find that the cause of the injury was the walk being out of repair, the snow being upon it, then the plaintiffs may be entitled to recover. So that is refused, as asked.

7. "That if the jury find that the defect complained of was on a crosswalk, then the plaintiffs cannot recover, because of the want of funds to repair the same." *By the Court.*—That is refused. That states a fact. The evidence in the case, so far as that is concerned, shows that the

funds were some $26 overdrawn upon a certain day, and upon a certain day afterward they were several hundred dollars overdrawn.

11. "That no notice to the defendant of the defect in the walk has been proved, and consequently plaintiffs cannot recover." *By the Court.*—That is refused. It is for you to consider whether notice has been shown or not. If the walk was in a condition out of repair, so that the proper officers should have known it, then the city is equally as liable as though they had written notice. The jury are to consider whether the city should have known that the walk was out of repair or not; but whether they did know it or not, the jury are at liberty to consider the facts, and determine whether the city had actual notice or not.

The other requests relate rather to extent of the injury, and the prudence of the injured plaintiff, than to the liability of the defendant.

*J. P. Whittemore*, for plaintiffs in error.

PROPOSITION. *That municipal corporations, in respect to their governmental functions, are not answerable in damages to individuals, but only to the People on indictment, The damages here claimed by an individual are for neglect of governmental duty, hence the action cannot be maintained.*

The principle we rely upon, that governments are not liable to individuals for infraction of law, or imperfect execution or enforcement thereof, or for failure to discharge governmental duty, inheres in the relation of government and subject; it is independent of the rule that a State cannot be impleaded in its own Courts—which latter rule only affects the remedy, and not the right; while the principle we rely upon, is founded in that practical common

sense which accepts the imperfections of human government as a necessity, and does not attempt to make society a voluntary insurance company, or establish the Utopian theory of a perfect and infallible government.

The city of Detroit is a governmental corporation. It has no rights or powers of government which are not held at the will of the State Legislature. It has no property which is not held at the Legislative will; none that has not been paid for by general or special tax upon its inhabitants. It has no more of a proprietary interest in any property thus acquired, than in case of special tax on frontage, for street paving, the resident taxpayers acquire to the street, or the improvement thus made.

As a corporation, it is the mere *naked trustee* of governmental powers ; with precisely the same relations to individuals within its boundaries and jurisdiction, as are held by the State to the people at large. As a body corporate, it has the same interest as the State in the exercise of its powers and functions; it receives no more reward, it derives no more income from the discharge of its duty. If it incurs a debt or a pecuniary obligation in the discharge of its duties, it can be sued in the Courts of the State, and compelled to levy a tax to pay it.

The State, it is true, cannot be sued in its own Courts, by reason of want of power in the Court, not of a difference in the nature of the respective corporations. This municipal corporation is a sovereignty within a sovereignty, *imperium in imperio.*

Our proposition as stated, is sustained by the whole body of the common law, without exception, both in England and America, up to the decision of *Mayor v. Furze* by the Supreme Court of New York in 1842, and by many decisions in America since that time.— *Vide Lane v. Cotton, 1 Ld. Raym., 646 ; Whitfield v. Le Despencer,*

*Cowp.*, *754; Buttrick v. Lowell, 1 Allen, 172; Walcott v. Swampscott, Id., 101* (decided in 1861); *Richmond v. Long, 17 Gratt., 375; Fowler v. Alexandria, 3 Pet., 398; Mitchell v. Rockland, 52 Maine, 118; Bigelow v. Randolph, 14 Gray, 541; Barney v. Lowell, 98 Mass., 570, and cases cited; Eastman v. Meredith, and cases cited, 36 N. H., 284; Freeholders v. Strader, 3 Harr., 108; 27 N. J., 415; 29 Id., 345; 32 Id., 394; 13 B. Monroe, 559; 12 Lou. Ann., 481; 12 Ohio N. S., 375; Mower v. Leicester, 9 Mass.; Daagan v. Mayor of Mobile, 31 Ala., 469; Duke v. Mayor, 20 Georgia, 635; Morey v. Newfane, 8 Barb., 645; Brinkmeyer v. Evansville, 29 Ind., 187; Russell v. Men of Devon, 2 Term R., 667; Bartlett v. Crozier, 17 J. R., 438; Martin v. Mayor* (decided in 1841); *1 Hill, 545; Griffin v. Mayor, 9 N. Y. 456* (decided in New York Court of Appeals in April, 1854).

In 1842, the Courts of the State of New York initiated a departure from the line of the common law on this subject, upon the strength of assertions which had foundation neither in reason or authority; which departure had an extensive following in other Courts. In 1854, New York returned to the beaten path of the common law, but in 1856, her Courts went again astray upon the strength of equally unfounded assertion; and in this last departure have had an extensive following, in which it is now proposed the Courts of Michigan should join.

The Courts of Michigan refused to follow the departure of 1842; and we may be excused if we refuse to follow the new departure of 1856, which has no better support in either law or reason than that of 1842.

The initial step of the departure in the New York Courts is *Bailey v. Mayor, 3 Hill, 531,* by Mr. Justice Nelson, who, at p. 539, says: "The argument of defendant's counsel confounds the powers in question with those

belonging to the defendants, in their character as a munic-
ipal or public body, such as are granted exclusively for
public purposes to cities, towns, and villages, where the
corporations have no private interest or estate in the grant.
* * If granted for public purposes exclusively, they belong
to the corporate body in its public, political, or municipal
character. But if the grant was for purposes of private
advantage or emolument, * * the corporation, *quoad hoc*,
is to be regarded as a private company. It stands on the
same footing as an individual, upon whom like special
franchises had been conferred." Here the learned Judge
declares the law correctly, as it had always stood up to the
time of the decision. The departure in this case consisted
in *assuming* that the city's estate or interest in the Croton
Water Works was of the same private nature as that which
a bank or railroad company holds in its property and
franchises; estates which, it must be conceded, could not
be taken away at the will of the Legislature on repeal or
extension of the city charter; estates not created by the
exercise of the sovereign power of taxation, but in which
individual stockholders must necessarily have proprietary
interests. And the learned Judge refers to the case of the
*East India Co., 1 Bro. Ch., 469*, as authority—a case clearly
of a private and proprietary estate in that corporation, of
the nature we insist upon as necessary to liability.

He also refers to *Mayor of Lynn v. Turner, Cowper
86*, and *Henley v. Mayor of Lyme, 5 Bing., 91*, which are
both cases where the corporations held private estates of
the same nature; the one a "creek upon the private estate
of the corporation," as to which, by prescription, *covenants
to repair* or keep in order were presumed; the other was
an express grant by deed, poll, of certain wharves with
*express covenants to repair ;* each in consideration of the
grant of the private estate. In the case of the Mayor of

Lynn, it was insisted, in defense, that the "*locus in quo*" was a public highway, and if so, that the *only remedy was by indictment.* But Lord Mansfield, in overruling this point, conceding it to be well taken, if true in fact, decided "that it did not appear but that the *place in question was a creek upon their own private estate,*" which it was alleged in the declaration they were *bound by prescription* to repair. And the case standing in judgment upon the allegations of the declaration, it was held to be the *private estate* of the corporation, which the defendants were bound by prescription to keep in repair.

The case of the *Mayor of Lyme* was precisely the same, only that the *covenants* to keep in repair were express, and in *consideration of a grant of tolls* of the wharves granted.

These were both cases of *grants irrevocable,* of private estate, and the obligations to repair were *covenant obligations* which were absolute, not dependent on knowledge, notice, funds, or ability to perform, nor upon the fact of negligence, nor of wilful default; but *covenants,* which nothing but the act of God, or the King's enemies, could excuse performance of.

It was decided in *Bailey v. Mayor,* that the estate of the City of New York, in the Croton Water Works, was of this nature; which bound the City, not by the obligations of a lease, as in the case of the East India Company cited,—not by the terms of any covenant, as in the cases of *Lyme Regis* and *Mayor of Lynn,* but to answer for negligence of its servants, about its private business. These cases were cited, it would seem, only to establish the proposition that municipal corporations may own private estates, as to which, they occupy the relation of individuals with respect to individuals. To that extent they were good authority, justifying the conclusion: *Provided,* That the "Croton Water Works" were that kind of property, and

that the city had a proprietary or private interest in them, like the interest a banking or railroad corporation has in its property, which the Legislature on repeal of the city charter could not take away or grant to a municipality of more extended limits, in the exercise of Legislative power over towns and cities. But the estate and interest of the city in the Croton Works was merely govermental and not of the nature asserted. (See *City of St. Louis v. Allen, 13 Mo. 400; 13 Mich. 481*). So that the departure in this case is not one of law, but of fact. The next step was departure from the law.

It is *Mayor v. Furze, 3 Hill, 612*, decided at the same term of the same Court as the preceding.

This case treats of *duties conceded to be public duties;* and which, it concedes, would come within the rule of exemption from liability which is declared in the preceding case, but for a distinction between duties *totally neglected,* and those improperly executed; which is asserted, *p. 618*, where it is said: " Though municipal corporations *are not liable for the improper* execution of a public work by agents whom they are obliged to employ (citing *Bailey v. Mayor*), *yet the same rule does not apply* where a duty specifically enjoined upon a corporation, as such, *has been wholly neglected by its agents."*

The converse of this assertion is said in *Weet v. Brockport, 16 N. Y. 116*, and other cases, to create this liability of a *public corporation* as to public duty. And, strange to say, this case is cited in opinion in *Weet v. Brockport* to sustain the assertions of its opposite. But in neither case is it attempted to explain how the public corporation acquires a private estate like those in *Mayor of Lynn* and *Lyme Regis*, by means of which it is made liable, by the fact of either misfeasance or nonfeasance,—or how the cov-enant obligation of those cases arises out of such fact.

Nor is it explained how any private interest, consideration, or benefit accrues to the corporation in consequence of either misfeasance or nonfeasance. But to resume the consideration of *Mayor v. Furze.* The learned Judge in his opinion preceding the assertion *that total neglect of duty* created the liability, pursued the line of reasoning, through which, the Court in Lyme Regis, arrived at a rule of determining when the covenant, which in that case ran to the King, enured to the benefit of an individual specially injured, which was, that the individual remedy ran parallel with that of indictment in the name of the King; therefore it was concluded by force of the assertion aforesaid in *Mayor v. Furze,* that the cases were parallel, and that the same rule prevailed as to the *public duties* prescribed in the charter of New York City, a *public corporation,* where there was neither covenant for doing, nor consideration for the covenant to discharge the duty; while the very cases of *Mayor of Lynn* and *Lyme Regis,* and the whole body of the common law, concede and declare a different rule prevails as to *public* duty of *public* bodies, viz: that indictment is the only remedy, and *the private action cannot be sustained* against them. See *Russell v. Men of Devon, 2 T. R., 667,* and cases cited *ante.*

The case of *Lloyd v. Mayor, 5 N. Y., 369,* follows in 1851, in the discussion of which it became apparent that there was a premis wanting in *Mayor v. Furze* from which to draw the conclusion of liability to individuals. This premis, *i. e.,* that the City of New York was a private corporation, was supplied, for the purposes of this case, by the assertion, in the opinion of the Court, substantially, that all corporate duties consisted of two parts, legislative and ministerial—or legislative and executive; that the former were governmental, and the latter individual, or private; saying

that the *purpose* of the one is public, of the other private. And the knot of the difficulty being thus cut, it is assumed that the conclusion of individual liability reached by the Judges in Lyme Regis, as applied in *Mayor v. Furze*, of course results.

The learned Judge fails, however, to show how the nature and obligation of the duty is changed from public to private, intermediate the enactment and execution of a law; or what *public purpose* of a law would be affected by enactment without execution—or what consideration or obligation accrues to the city as an individual, any more in the execution than in the enactment of a law.

It is easy to understand how individuals may contract with the city to perform a work and incur individual liability; but how the city can contract with itself, so as to incur the individual contract obligation, which is necessary to the proper application of the doctrine of Lyme Regis, is a question involved in the assertion, unsolved by the Court.

This decision applies to all ministerial duties of all governmental corporations, States, counties, cities, villages, and towns; and raises the covenant obligation of Lyme Regis perfectly to enforce all laws, which as governments they enact. And strange to say this decision has had its following.

The next case in the line of departure is *Hutson v. Mayor, 9 N. Y., 163*—decided in 1853; in deciding which, it is said, upon the authority of *Mayor v. Furze*, that the law is established *beyond question* "that neglect of *public governmental* duties, as to highways and streets, is the ground of action by individuals against municipal corporations." And the Court say, "*it is a waste of time to examine the authorities*" cited by defendant; that they are

cases where the Courts have excused *public* officers and *public* bodies, for omission to keep highways in repair, for the *want of adequate means to do it.*

Among the cases thus summarily disposed of are *Russell v. the Men of Devon, Bartlett v. Crozier,* and *Mower v. Leicester,* etc., *ante,*—no one of which was decided on any such ground.

The *Men of Devon* and the *Mayor of Lynn,* and *Lyme Regis,* clearly establish parallel lines in the English common law. The former decides that *public bodies* are not liable to individual action for breach of public duty, but only to the public on indictment. (See *Gibson v. Mayor,* etc., *of Preston, 5, Queen's Bench Law Reports, 218, 222.*)

The Judges in deciding the *Men of Devon* distinctly admit the authority of cases which establish the liability of corporations as individuals, to individuals, for neglect of duty, but emphatically and unanimously declare *there is no foundation in reason* or *authority* for such an action against the public body. They state various reasons why the action cannot be maintained, and among others, that the county is not a corporation, and has no funds for such a purpose. These are among the reasons why there was no *foundation in reason* or *authority for sustaining* the action. It is evident that Lord Kenyon, by this assertion, meant, simply, that the county was not chartered, like a Turnpike Company, and deriving revenue from tolls; in other words, it was not a *private corporation* with an income derived from discharge of its duties, as was the case of *Penhallow v. Mersey Docks Board, House of Lords R. of 1866, pp. 93 to 123.*

On the other hand, *Lyme Regis* and the *Mayor of Lynn* establish the rule of liability of corporations as individuals, to individuals. In the *Men of Devon,* the Court expressly exclude from their judgment the questions of

private right and liability. In the *Mayor of Lynn*, Lord Mansfield explicitly excludes the subject of *public liability* from his judgment, and *Lyme Regis* does the same. In the *Men of Devon* it is adjudged that the only redress against the public body is by *indictment*, and that there is no right of *private* action. In *Lyme Regis* it is held that as to the private property and obligations of the corporation, both *private actions and indictments* will lie; and the Judges, in determining the right of individuals to come in under the covenant which runs to the King, and recover damages to themselves by virtue of that covenant, decide, that when the breach is such that an indictment will lie, the covenant enures to the benefit of an individual specially injured.

These cases have run in parallel lines in England to the present day, and were never supposed in America to clash, till *Mayor v. Furze* applied the rule of *Lyme Regis*, instead of that of the *Men of Devon*, to *public municipal duties;* and *Hutson v. Mayor* clinched the matter, by an assertion, which was opposed to the whole body of the common law on the subject, up to 1842.

The next case in the Court of last resort in New York, was decided in 1854,—*Griffin v. Mayor, 9 N. Y. 456*, which, without claiming to overrule the previous cases, asserted a distinction in point of fact, which was without a difference in point of law, and unanimously decided, that the corporation *was no more liable than the State "for want of adequate administrative laws, or for any imperfection in the manner of carrying them out."*

Thus the Courts of New York returned to the principles of the common law. But again, in 1856, made a new departure in the Court of Appeals, in *Hickok v. Platsburgh, 16 New York, 116*, adopting the opinion of *Selden J.* in. *Weet v. Brockport*, as decisive in that case.

This opinion abandons the grounds taken in *Mayor v. Furze*, that total nonfeasance of duty changes the city to a private corporation, and, for the decision of *Weet v. Brockport*, asserts that *misfeasance* has that effect; it abandons the assertion in *Lloyd v. Mayor* that all ministerial public duties are private individual duties, assumed for a consideration; it overturns the assertion in *Hutson v. Mayor*, that the *want* of *funds* was the only excuse ever allowed for nonfeasance of duty—and it demonstrates that, as to all municipal corporations, except cities and villages, *there is no liability to individuals, because the duties are governmental* —but as to cities and villages, it applies the doctrines of *Lyme Regis* upon the assertion of a *consideration* emanating from a *request*, which, *it is asserted*, cities and villages make of the Legislature for their charters, and which request, being made and granted, distinguishes their charters from those of towns and counties, and makes a contract for a consideration between the State and the city or village, like the covenants in the *Mayor of Lynn* and *Lyme Regis*, binding such corporations, as to the *sovereign powers of the State* committed to their charge, " to perform with fidelity the duties which the charter imposes."

We admit the proposition, to the extent that the corporation is bound to perform with *fidelity* the duties which the charter imposes; and that, at the common law, an indictment would lie against the corporation in a proper case for neglect. But, that there is a covenant, or contract obligation, binding such corporations, any more than towns or counties, or for a consideration in the one case, any more than in the other, we deny.

The assertion of a difference in *consideration*, or in the *nature* of the obligation of cities and villages, from that of towns and counties, is, for the first time in the whole body of the common law, made in this decision. So that we are

21 MICH.—M.

safe in saying the assertion has no foundation in authority. We proceed to show it equally at fault in reason.

It rests upon the assertion *by the Court* of a *matter of fact, i. e.,* that a request of the corporation, for a charter, preceded the charter. It is evident that the corporation could not prefer a request till itself was created by the grant of a charter. It is, if a material and vital fact, as stated in this opinion, of course, a traversable fact. Yet, neither before nor since this decision, was such a fact ever averred or proved, admitted or denied, in any case that has ever been reported. Nor could the Court properly assume the existence of such a fact, without either allegation or proof of it in the record. It is palpably evident that no pecuniary consideration inheres in the fact, if admitted. Nor does the fact of such request contain any elements of benefit or harm to the State or municipality, whether made or granted; neither the Legislature or municipality is bound differently by reason of such request,—it is like any other petition for any public law, in its effect upon the petitioners; they have no *special* interest in the law, nor are they *specially* bound by it because they petition for it.

The proposition involves the idea that the *sovereign power of the State* is "farmed out" to municipalities upon a rental; and that the corporation acquires property in them, like that the corporation of *Lyme Regis* had in the wharves, or that of *Lynn* in "the creek on its own private estate;" which would forbid the grant of sovereign power being resumed by the State at will. That no such *property* in the sovereign power of the State is transferable, is well settled. (See *13 Mich., and 13 Mo., ante.*)

A municipality in its individual capacity, in which it sustains the same relation to the State and people, as a bank, a railroad company, or an individual, has not capacity to hold or exercise sovereign governmental power

DETROIT *v.* BLACKEBY.

over the people; the idea antagonizes the fundamental principles of republican institutions, which consist only with government by the people. This proposition is, that *all* sovereign power of the municipality is "let out" to be executed and legislated, for a consideration, and *on condition* that it shall be infallibly executed; not subject to the same conditions as the same powers were held by the State (as was the case in *Lyme Regis* with respect to the grant from the king to that corporation, where it is said that the corporation held the wharves subject to the same obligations that the king held them, only the king could not be sued), but with the additional obligation, which did not attach to the powers while held by the State, that the municipality should *insure to individuals infallible execution of all the powers granted* in the corporate charter.

This includes *every duty*, whether *permissively* or *imperatively* imposed by the charter. (See *Mayor v. Furze.*)

It includes *every power in the charter;* as well police regulations for the prevention of crime or fire (see *29 Ind., 187, ante*), or damage by water, by pestilence, and plague, as the laws relating to highways.

No action for neglect of the performance of the duty thus imposed, can be defended on any other ground than that performance was prevented by the act of God, or public enemies. Every city and village in the State of New York, while this decision is law, holds its charter upon the Utopian theory, that all its laws shall be faultlessly executed, and individuals therein are gratuitously insured by the public to that effect.

This decision was carried to its logical results in *Jones v. New Haven, 34 Conn.,* 1. And the question to-day is, whether this Utopian theory shall be established by judicial decision for Detroit, by following a decision which rests

upon the *assertion* of *the fact of a request* for her charter, and the consideration which emanated from that request.

Michigan Courts refused to follow *Mayor v. Furze,* and *Lloyd v. Mayor.* (See *Dermont v. Mayor, 4 Mich., 435 ; Commissioners v. Niles, Id., 557 and 11 Id., 88.*)

We protest against the following this still more disastrous departure from the beaten track of the common law, whatever following such departure may have had in other Courts.

It will be found, on looking through the authorities in America, that the departure from the common law was initiated as we have stated, and that its following in other Courts is based in every instance upon the authorities we have criticised.

*Geo. H. Prentis* and *Theo. Romeyn,* for Defendants in Error.

I. The city of Detroit, under its charter, has sole control, exclusive of the State or county, of its streets and highways. The duty of construction, repairs, and supervision rests with its common council. Adequate means and agencies are provided for the faithful discharge of this duty.

Under this last (as to adequate means and agencies) we remark : (*a.*) It has power to raise and expend a fund for the general repair of the highways. (*b.*) The fund thus raised, the District Road Fund, is according to the rates for township roads and highway purposes, and is to be presumed adequate to cover the ' expenses of working and repairs.—*1 Comp. Laws, 346–7.* (*c.*) When extraordinary alterations and repairs are needed, as in the case of a sewer, there are especial and sufficient provisions for meeting

the costs of them. (*d.*) In addition to all these, then, the corporation has power to collect, by special assessment upon the owners of adjacent property, the costs and expenses of extraordinary improvements and repairs.

II. The corporation having its *special* charter, distinct from the general legislation of the State as to towns and counties, and having, under the charter, the sole control of its streets, the duty and obligation to keep them in repair follow by necessary consequence.

The language of the charter, though permissive, imposes the same duty and obligations as though in express terms the repairs had been directed. The power conferred carries along with it the duty of its faithful execution. *Furze v. Mayor of New York, 3 Hill, 611; Hutson v. Mayor, 5 Sandf., 289; Erie City v. Schwingle, 22 Penn., 388; Wilson v. Mayor of New York, 1 Denio, 601; Conrad v. Trustees of Ithica, 16 N. Y., 158; Lee v. Village of Sandy Hill, 40 N. Y., 442.*

III. The city of Detroit, being thus chargeable under its special charter with the duty of keeping streets and highways in repair, is liable civilly for damages, in a proper case, for the neglect of this duty, to a person suffering special injury through the neglect of the city to keep the highways and sidewalks in repair.

There are exceptions and limitations to this liability, as in cases where the party injured was in default, or where the city was not chargeable with notice of the defect. We therefore say, as above, "*in a proper case.*"

If this be an open question, we assert the law to be, that when a municipal corporation is under a legal obligation to repair the place in question, though such obligation be matter of so general and public concern that an indictment would lie against the corporation for non-repair; and it appears that the place in question was out of repair;

and, lastly, that the plaintiff has sustained some particular damage, beyond the rest of the public, by such want of repairs, he has a right to recover such damage from the corporation.

This is the doctrine and substantially the language of *Henley v. Mayor of Lyme Regis*, as reported in *1 Bingham's New Cases, p. 222.* This is the decision in the House of Lords. The same case had been previously in the Common Pleas and in the King's Bench. See *5 Bingham, 91 ; 3 Barn. & Ad., 77.*

We go back from this decision to that of *Russell v. Men of Devon, 2 Term. Rep., 667 ;* and we insist that all the English cases, so far as the present question is involved, are consistent and uniform. See a review of them by Judge Selden, *16 N. Y., 163.* Also *Mersey Dock & Harbor Co. v. Gibbs et al., House of Lords Reports, 1 Vol., p. 93–128 ; Coe v. Wise, 1 Queen's Bench Rep., 719.*

An action will not lie except in behalf of a plaintiff who has sustained a special injury. Nor unless the defendant is under *obligations to repair*, either individually or as a distinct and special corporation. The obligation to repair may arise from covenant, or from special grant from the Sovereign of valuable property or franchises, with directions to perform the duty of repairs (which is tantamount to a condition), or from prescription. The liability does not attach to *quasi* corporations, of a public character, existing *under general public laws*, such as townships or counties, and not possessed of distinct property, but it does attach to municipal corporations having special privileges, owning distinct corporate property, and bound to discharge specific public duties. There is a plain distinction between duties which are of a judicial or legislative character and those which are ministerial. Thus a municipal corporation is not liable for neglecting to adopt

a system of sewerage, or for adopting an 'imperfect system, but it is liable for not keeping in repair a sewer; and so as to a highway. It may not be easy or possible to define in advance the line of distinction between all supposable cases, but the judicial right and duty to decide on the particular case, when it arises, are not affected by this difficulty. See *Bronson v. Kinzie, 1 Howard, 317.*

We refer to the following cases among many others:

New York Cases.—*Furze v. Mayor of New York, 3 Hill, 612; Wilson v. Mayor of New York, 1 Denio, 595; Rochester White Lead Co. v. City of Rochester, 3 N. Y., 465; Lloyd v. Mayor of New York, 5 N. Y., 369; Hutson v. Mayor of New York, 9 N. Y., 163; Griffin v. Mayor of New York, 9 N. Y., 456; Conrad v. Trustees of Village of Ithaca, 16 N. Y., 158; Storrs v. City of Utica, 17 N. Y., 104; Mills v. City of Brooklyn, 32 N. Y., 489; Lacour v. Mayor of New York, 3 Duer, 414; Delmonico v. Mayor of New York, 1 Sandford's Superior Court Rep., 226; Lee v. Village of Sandy Hill, 40 N. Y., 442.*

Illinois Cases.—*Browning v. City of Springfield, 17 Ill., 143; Clayburg v. City of Chicago, 25 Ill., 523; City of Springfield v. LaClare, Chicago Legal News, April 3, 1870.*

Alabama Cases.—*Smoot v. Mayor of Wecumpka, 24 Ala., N. S., 112.*

Connecticut Cases.—*Jones v. City of New Haven, 34 Conn., 1; Ib., 126.*

North Carolina Cases.—*Meares v. Wilmington, 9 Iredell, 73.*

New Hampshire Cases.—*Eastman v. Town of Meredith, 36 N. H., 284.*

Massachusetts Cases.—*Walcott v. Inhabitants of Swampscott, 1 Allen, 101; Barney v. City of Lowell, 98 Mass., 570.* (These were actions for injuries by employees or servants of public officers, and turned on the relation between

these officers and the municipalities. It was held that the officers were not agents of the corporation, but had independent powers as public officers. In connection with this, see *16 N. Y., 169*.) *Bigelow v. Inhabitants of Randolph, 14 Gray, 541; Child v. City of Boston, 4 Allen, 41.*

Maryland Cases.—*County Commissioners of Ann Arundel County v. Duckett, 20 Md., 468.*

Indiana Cases.—*Stackhouse v. City of Lafayette, 26 Ind., 17; Brinkmeyer v. City of Evansville, 29 Ind., 187.*

Pennsylvania Cases.—*Pittsburgh City v. Grier, 22 Penn., 54; Erie City v. Schwingle, Ib., 388.*

United States Decisions.—*Weightman v. Corporation of Washington, 1 Black, 41; Chicago City v. Robbins, 2 Black, 418; Nebraska City v. Campbell, Ib., 590; Robbins v. Chicago City, 4 Wallace, 658; Supervisors v. United States, 4 Wallace, 435; Mayor v. Sheffield, 4 Wallace, 194.*

Wisconsin Cases.—*Cook v. City of Milwaukee, Law Register for April, 1870, vol. 9, N. S. p. 263; Willcock on Municipal Corporations, p. 30; Angell & Ames on Corporations, sec. 83.*

Virginia Cases.—*Sawyer v. Corse, 17 Grattan, 241; City of Richmond v. Long, Ib., 375.*

Very many more cases might be cited. *Davenport v. Ruckman, 37 New York, 68; Barton v. City of Syracuse, 37 Barbour, 294, and 36th New York, 54; Western College v. City of Cleveland, 12 Ohio, 377, N. S.*

We contend that a municipal coporation, under a special charter, becomes a legal person, endowed with special powers, privileges, and duties. It lives, and moves, and has its being under its own charter, and not under the general laws. In consideration of the exemptions and capacities specified in its charter, it assumes to discharge its peculiar duties. If it fail in this, it becomes liable in damages to any person specially injured by its acts or

omissions in matters of a ministerial character.    Among
these matters are the care, supervision, and repair of high-
ways.    Nearly all the cases show this; and this Court is
called upon to declare and apply the law, and not to
make it.

As to the Michigan decisions :

The first case which we. cite is *Dermont v. Mayor of
Detroit, 4 Mich., 435.*    In this the city was exempted from
liability, on the ground that the *general plan* of the
sewerage was a matter of discretion, and that the damage
arose from the plaintiff's connecting his private drain with
the public sewer.    There was no want of prudence or skill
in constructing or maintaining the sewer and its public
connections.    In Furze's case, in *3 Hill, N. Y.,* the city
was held liable, not for errors of construction, but for
neglect in keeping the sewer in repair.    *Commissioners of
Highways of Niles v. Martin, 4 Mich., 557,* sustains our
views in all respects.

In *City of Detroit v. Corey, 9 Mich., 165,* the obliga-
tion of the city to keep the highways in repair, and their
liability for neglecting it, were virtually conceded.    The
questions disputed were as to their liability for the acts
and omissions of the contractors.

In *Dewey v. The City of Detroit, 15 Mich., 307,* the
liability of the city was conceded, provided it had the
means of repairing the sidewalk, and had notice of the
defects.

CAMPBELL, CH. J.

The principal question in this case is whether the city
of Detroit is liable to a private action by an injured party,
for neglect to keep a cross-walk in repair.    The other ques-
tions involve an inquiry into the circumstances which would
go to modify any such liability in the present case.

21 MICH.—N.

There has been but one case in this State, decided by this Court, where the claim for damages arose purely out of a neglect to repair. In *Dewey v. The City of Detroit, 15 Mich. R., 307,* such a suit was brought, but it did not call for a decision upon the main question. In *Township of Niles v. Martin, 4 Mich. R., 557,* it was held there was no such liability in a township, and this case was followed by us at the last term in *Township of Leoni v. Taylor.* It was held in *Larkin v. Saginaw County, 11 Mich. R., 88,* that a county could not be sued for directing a bridge to be built on a plan that was defective and injurious. In *Pennoyer v. Saginaw City, 8 Mich. R., 534,* a city was held liable for continuing a private nuisance which it had created; and in *Detroit v. Corey, 9 Mich. R., 165,* the city of Detroit was held liable for an accident caused by leaving an excavation in a street for a sewer imperfectly guarded. In *Dermont v. Detroit, 4 Mich., 435,* it was held the city was not liable for the flooding of a cellar by a sewer into which it drained.

None of those cases presented the precise question raised here, and we are required, therefore, to consider it as an original inquiry, except in so far as it may be affected by any principles involved in the cases already decided.

The streets of Detroit are public highways, designed like all other roads, for the benefit of all people desiring to travel upon them. The duty or power of keeping them in proper condition is a public and not a private duty, and it is an office for the performance of which there is no compensation given to the city. Whatever liability exists to perform this service to the public, and to respond for any failure to perform it, must arise, if at all, from the implication that is claimed to exist in the nature of such a municipality.

There is a vague impression that municipalities are

bound in all cases to answer in damages for all private injuries from defects in the public ways. But the law in this State, and in most parts of the country, rejects this as a general proposition, and confines the recovery to causes of grievance arising under peculiar circumstances. If there is any ground for recovery here, it is because Detroit is incorporated. And it depends therefore on the consideration whether there is anything in the nature of incorporated municipalities like this which should subject them to liabilities not enforced against towns or counties. The cases which recognize the distinction apply it to villages and cities alike.

It has never been claimed that the violation of duty to the public was any more reprehensible in these corporations than outside of them; nor that there was any more *justice in giving* damages for an injury sustained in a city or village street than for one sustained outside of the corporate bounds. The private suffering is the same, and the official negligence may be the same. The reason, if it exists, is to be found in some other direction, and can only be tried by a comparison of some of the classes of authorities which have dealt with the subject in hand.

It has been held that corporations may be liable to suit for positive mischief produced by their active misconduct, and not from mere errors of judgment. And while the application of this rule may have been of doubtful correctness in some cases, the rule itself is at least intelligible, and will cover many decisions. It was substantially upon this principle that the case of *Detroit v. Corey* was rested by the Judges who concurred in the conclusion. *Thayer v. the City of Boston, 19 Pick., 511,* was a case of this kind, involving a direct encroachment on private property. *The Rochester White Lead Co. v. City of Rochester, 3 N. Y., 465,* where a natural water-course was narrowed and

obstructed by a culvert entirely unfit for its purpose and not planned by a competent engineer, is put upon this ground in the decision of *Hickok v. Plattsburgh, 16 N. Y., 161. Lee v. Village of Sandy Hill, 40 N. Y., 442,* involved a direct trespass.

The injuries involved in these New York and Massachusetts cases referred to were not the result of public nuisances. but were purely private grievances. And in several cases cited on the argument, the mischiefs complained of were altogether private. The distinction between these and public nuisances or neglects has not always been observed, and has led to some of the confusion which is found in the authorities. . In all the cases involving injuries from obstructions to drainage, the grievance was a private nuisance. In case of *Mayor v. Furze, 3 Hill R., 612,* which has been generally treated as a leading case, the damage was caused by water backing up from sewers not kept cleared out as they should have been. *Barton v. Syracuse, 36 N. Y., 54,* involved similar questions, as did also *Childs v. Boston, 4 Allen, 41.* These cases do not harmonize with *Dermont v. Detroit,* but they rest on the assumption that, having constructed the sewers voluntarily for private purposes, and not as a public duty, the obligation was complete to keep them from doing any mischief, as it would be in private persons. And in *Bailey v. Mayor, 3 Hill R., 538,* and *2 Denio, 433,* the mischief was caused by the breaking away of a dam connected with the Croton water-works, whereby the property of the plaintiff was destroyed. In this latter case the judgment rested entirely upon the theory that the city held the water-works as a private franchise and possession, and subject to all the responsibilities of private ownership. The Judges, who regarded it as a public work, held there was no liability. In *Conrad v. Trustees of Ithaca, 16 N. Y., 159,* the facts

were substantially like those in *Rochester White Lead Co. v. City of Rochester,* and the decision was rested on the principles of that case. *Denio, C. J.,* who delivered the opinion of the Court, stated his own opinion to be that there was no liability, but that he regarded the recent decision in another case referred to as establishing it. And in *Livermore v. The Freeholders of Camden, 29 N. J., 245* (and on Error, *2 Vroom, 507*), under a statute like that which was construed by this Court in *Township of Leoni v. Taylor,* it was decided that while a passenger over a bridge could sue for injuries, yet where property adjacent was injured by the bridge there was no remedy. Upon any theory which sustains the liability for such grievances, however, it is manifest that the injury is not a public grievance in any sense, and does not involve a special private damage from an act that at the same time affects injuriously the whole people.

Another class of injuries involves a public grievance specially injuring an individual, arising out of some neglect or misconduct in the management of some of those works which are held in New York to concern the municipality in its private interests, and to be in law the same as private enterprises. It is held that in constructing sewers, and similar works, which can only be built by city direction, if the streets are broken up and injuries happen because no ᐧadequate precautions are taken, the liability shall be enforced as springing from that carelessness, and not on the ground of non-repair of highways. *Lloyd v. Mayor, 5 N. Y., 369,* and *Storrs v. Utica, 17 N. Y., 104,* were cases of this kind. In these cases, as in the case of *Detroit v. Corey,* the streets were held to have been broken up by the direct agency of the city authorities, and the negligence which caused the injury was held to be negligence in doing a work requiring special care,—or, in other

words,—the wrong complained of was a misfeasance and not a mere omission. The case of *Weet v. Brockport, 16 N. Y., 161,* was also a case where *Selden, J.,* who reviews and discusses all the decisions, said it was not necessary to consider the wrong complained of as a mere neglect of duty, because it was in itself a dangerous public nuisance created by the corporation, and not in any sense a nonfeasance. In *Delmonico v. Mayor, 1 Sandf., 226,* the injury, though in a highway, consisted in crushing in a vault under the street, by improperly piling earth upon it while excavating for a sewer, and this was also a direct misfeasance.

The cases in which cities and villages have been held subject to suits for neglect of public duty, in not keeping highways in repair, where none of the other elements have been taken into the account, are not numerous, and all which quote any authority profess to rest especially upon the New York cases, except where the remedy is statutory. It will be proper, therefore, to notice what those cases are, and upon what basis they are supported. The only cases of this kind decided in the courts of last resort, that we have been able to find, are *Hutson v. Mayor, 9 N. Y. 163; Hickok v. Plattsburgh, 16 N. Y., 161;* and *Davenport v. Ruckman, 37 N. Y., 568.* This latter case resembles the one before us very closely in its leading features, and would furnish a very close precedent. It is not reasoned out at all, but refers for the doctrine to the other two cases, and to an authority in *18 N. Y.,* which does not relate to municipal liability. The case of *Hutson v. Mayor* does not attempt to find any distinct foundation for the right of action, but refers to the cases in *3 Hill* and the *Rochester White Lead Co.* case, and *Adsit v. Brady, 4 Hill, 630,* as having established the liability. This latter case is disapproved in *Weet v. Brockport,* and the others are sus-

tained there on the ground of misfeasance. And as Judge Denio, when the decisions in *16 N. Y.* were made, stated. that he had not supposed there was any corporate liability for mere neglect to keep ways in repair, it is quite possible that the case of *Hutson v. Mayor* was regarded as distinguishable. The circumstances were very aggravated, as it would seem that the city had left a road too narrow to accommodate a carriage, without any paving and without protection against the danger of falling down a deep embankment into a railroad excavation. The report is not as full as could be desired upon the precise state of facts. In the Supreme Court, where the Judges differed in opinion, (two dissenting), the liability seems, from the view taken of that case by Judge Selden, to have rested on the ground that there had been a breach of private duty, and not of duty to the public. If this was the view actually taken, it would not bring the case within the same category with the *other* road cases. But the case of *Weet v. Brockport,* *16 N. Y., 161,* is recognized as the one in which the whole law has been finally settled, and it is upon the grounds there laid down, that the liability is now fixed in New York. The elaborate opinion of Judge Selden, which was adopted by the Court of Appeals, denies the correctness of the *dicta* in some of the previous cases, and asserts the liability to an action solely upon the ground that the franchises granted to municipal corporations are in law a sufficient consideration for an implied promise to perform with fidelity all the duties imposed by the charter;—and that the liability is the same as that which attaches against individuals who have franchises in ferries, toll-bridges, and the like. The principle, as he states it, is :—" That whenever an individual, or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either express or implied, to do

certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to enure to the benefit of every individual interested in its performance."

In order to get at the true ground of liability, the opinion goes on to determine, *first*, whether townships and other public bodies, not being incorporated cities or villages, are liable, and shows conclusively that they are not. And the Court arrive at this conclusion, not on the basis of an absence of duty or an absence of means, but because their duties are duties to the public, and not to individuals. To show this, full citations are made from the English cases, which were cited before us, and also from the American cases. The case of *Young v. Com'rs of Roads, 2 Nott & McCord, 537*, is cited approvingly, and the following language is quoted as expressing the correct idea:— "When an officer has been appointed to act, not for the public in general, but for individuals in particular, and from each individual receives an equivalent for the services rendered him, he may be responsible, in a private action, for a neglect of duty; but when the officer acts for the public in general, the appropriate remedy for his neglect of duty is a public prosecution." In another part of the opinion, Sheriffs are given as examples of the former, and Highway Commissioners of the latter class of officers. The cases cited do not all require the consideration for the services to come immediately from individuals, but they all require the services to be due to individuals, and not to the public, and to spring from contract. The English cases are reviewed in the *Mersey Dock cases*, and exemplify this. Thus the liability to repair a sea-wall is in favor of those

who own the property adjacent; the liability to keep docks
safe of access, in favor of those who have occasion to
require their use upon the customary terms ; the liability
to keep toll-bridges safe, in favor of those who use them.
But there is no instance of liability where the public is
interested directly. And in those cases where the obliga-
tion rests upon the consideration of corporate franchises,
the duty has also been towards individuals, although the
consideration moved from the State. The decisions upon
this sustain the views of Judge Selden concerning his
premises, but there is some difficulty in reaching his
conclusions through them.

. It is admitted everywhere, except in a single case in
Maryland, that there is no common-law liability against
ordinary municipal corporations such as towns and counties,
and that they cannot be sued except by statute.

It has also been uniformly held in New York, as
well as elsewhere, that public officers, whose offices
are created by act of the Legislature, are in no sense
municipal agents, and that their neglect is not to be
regarded as the neglect of the municipality, and their mis-
conduct is not chargeable against it unless it is authorized
or ratified expressly or by implication. This doctrine has
been applied to cities as well as to all other corporations.
*Barney v. Lowell, 98 Mass. R., 570 ; White v. Phillipston,
10 Metc., 108 ; Mower v. Leicester, 9 Mass., 247 ; Bigelow
v. Randolph, 14 Gray, 541 ; Walcott v. Swampscott, 1 Allen,
101; Young v. Com'r of Roads, 2 Nott & McCord, 537 ;
Pack v. Mayor, 4 Seld., 222 ; Martin v. Mayor of Brook-
lyn, 1 Hill, 545 ; Bartlett v. Crozier, 17 J. R., 438 ; Morey
v. Newfane, 8 Barb., 645 ; Eastman v. Meredith, 36 N. H.,
284; Hyde v. Jamaica, 27 Vt., 443 ; Lorillard v. Town of
Monroe, 11 N. Y. 392 ; Mitchell v. Rockland, 52 Maine,
118.*

21 MICH.—O.

And the numerous cases which exonerate cities from liability for not enforcing their police laws, so as to prevent damage, rest upon a very similar basis.—*Fowle v. Alexandria, 3 Peters R., 398 ; Levy v. Mayor, 1 Sandf. S. C., 465 ; Prather v. Lexington, 13 B. Monroe, 559 ; Howe v. New Orleans, 12 La. Ann., 481; Western Reserve College v. Cleveland, 12 Ohio St., 375 ; Brinkmeyer v. Evansville, 29 Ind., 187 ; Griffin v. Mayor, 9 N. Y., 456.*

In the case of *Eastman v. Meredith, 36 N. H., 284,* the distinction between the English and American municipal corporations is clearly defined. The former often hold special property and franchises of a profitable nature, which they have received upon conditions, and which they can hold by the same indefeasible right with individuals. But American municipalities hold their functions merely as governing agencies. They may own private property, and transact business not strictly municipal, if allowed by law to do so, just as private parties may, and with the same liability. But their public functions are all held at sufferance, and their duties may be multiplied and enforced at the pleasure of the Legislature. They have no choice in the matter. They have no privileges which cannot be taken away, and they derive no profit from their care of the public ways, and the execution of their public functions. They differ from towns only in the extent of their powers and duties bestowed for public purposes, and their improvements are made by taxation, just as they are made on a smaller scale in towns and counties.

In the case of *Bailey v. Mayor* it was intimated by Judge Nelson that the State could not compel the city to accept its charter, and in *Child v. Boston, 4 Allen 41,* the fact that the sewerage system had been left to vote and been accepted, was held to make it a private and not a public matter. The sewer

cases have, in several instances, gone upon this latter notion. It is not necessary to discuss that question here, because streets are not private, and because, in this State, at least, no municipality can exercise any powers except by State permission, and every municipal charter is liable to be amended at pleasure. The charter of Detroit has undergone the most radical changes.

It is impossible to sustain the proposition that these charters rest in contract. And it is impossible,—as Judge Selden demonstrates, to find legal warrant for any other ground for distinguishing the liability of one municipal body from that of another. There is no basis in authority for any such distinction concerning the consideration on which their powers are granted, and it rests upon simple assertion. And yet the decision stands in New York as authority for all that is claimed here, because, although in the case in which the opinion was given in the Supreme Court, it was not called for, yet in the case of *Hickok v. Trustees of Plattsburgh*, in which it was adopted as the opinion of the Court of Appeals, the mischief was a mere neglect to repair, where the street had been obstructed by an individual excavation for a short time.

It is impossible to harmonize the decision with the previous decisions exempting corporations from responsibility because public officers were not their agents. It is no easier to sustain it in the face of the uniform decisions denying liability for failure to enforce their police regulations. The authorities which make corporations liable on the ground of conditions attached to their franchises, go very far towards compelling them to respond as absolutely bound to prevent mischief. And the general reasoning on which the most of the opinion rests, and the criticisms made upon former decisions,—which, it is asserted, went altogether too far in creating liability,—all are designed to

show, and do show, very forcibly that simply as municipal
corporations,—apart from any contract theory,—no public
bodies can be made responsible for official neglect involv-
ing no active misfeasance.

There is no such distinction recognized in the law else-
where. In *City of Providence v. Clapp, 17 How. R., 161,*
the United States Supreme Court, through Judge Nelson,
held that cities and towns were alike in their responsi-
bility and in their immunity. In *County Commissioners of
Anne Arundel v. Duckett, 20 Md., 468,* a county was held
responsible to the fullest extent. In New Jersey, in *Free-
holders of Sussex v. Strader, 3 Harr. (18 N. J.), 108; Cooley
v. Freeholders of Essex, 27 N. J., 415; Livermore v. Free-
holders of Camden, 29 N. J., 245,* and *2 Vroom. (31 N. J.),
507;* and *Pray v. Mayor of Jersey City, 32 N. J., 394,* the
cases were all rested on the same principles, and cities were
exonerated because towns and counties were. The sugges-
tion of Judge Selden has been caught at by some courts
since the decision, and has been carried to its legitimate
results, as in *Jones v. New Haven, 34 Conn., 1,* where the
damage was caused by a falling limb of a tree. But, so
far as we have seen, even the cases which are decided on
this ground, do not hold that towns do not receive their
powers upon a consideration as well as cities. That ques-
tion still remains to be handled in those courts.

It is utterly impossible to draw any rational distinction
on any such ground. It is competent for the Legislature
to give towns and counties powers as large as those
granted to cities. Each receives what is supposed to be
necessary or convenient, and each receives this because
the good government of the people is supposed to require
it. It would be contrary to every principle of fairness to
give special privileges to any part of the people and deny
them to others; and such is not the purpose of city char-

ters. In England the burgesses of boroughs and cities had very important and valuable privileges of an exclusive nature, and not common to all the people of the realm. The charters were grants of privilege and not mere government agencies. Their free customs and liberties were put by the great charter under the same immunity with private freeholds. But in this State, and in this country generally, they are not placed beyond legislative control. The Dartmouth College case, which first established charters as contracts, distinguished between public and private corporations, and there is no respectable authority to be found anywhere, which holds that either offices or municipal charters generally involve any rights of property whatever. They are all created for public uses and subject to public control.

We think that it will require legislative action to create any liability to private suit for non-repair of public ways. Whether such responsibility should be created, and to what extent and under what circumstances it should be enforced, are legislative questions of importance and some nicety. They cannot be solved by courts.

Judgment should be reversed with costs.

CHRISTIANCY and GRAVES, JJ. concurred.

COOLEY, J. dissenting.

It is unquestionably, I think, a rule of sound public policy, that a municipal corporation which is vested with full control of the public streets within its limits, and chargeable with the duty of keeping them in repair, and which also possesses by law the means of repair, should be held liable to an individual who has suffered injury by a failure to perform this duty. If we sat here as legislators

to determine what the law ought to be, I think we should have no difficulty in coming to this conclusion.

But we sit here in a judicial capacity, and the question presented is, what is the law, and not what ought the law to be. This question is to be determined upon common-law principles, and the most satisfactory evidence of what those principles are is to be found in the decisions of the courts.

The decisions which are in point are numerous; they have been made in many different jurisdictions, and by many able jurists,—and there has been a general concurrence in declaring the law to be in fact what we have already said in point of sound policy it ought to be. We are asked, nevertheless, to disregard these decisions, and to establish for this State a rule of law different from that which prevails elsewhere, and different from that which, I think, has been understood and accepted as sound law in this State prior to the present litigation.

The reason pressed upon us for such a decision is, not that the decisions referred to are vicious in their results, but that the reasons assigned for them are insufficient, so that, logically, the courts ought to have come to a different conclusion.

I doubt if it is a sufficient reason for overturning an established doctrine in the law, when its results are not mischievous, that strict logical reasoning should have led the courts to a different conclusion in the beginning; if it is, we may be called upon to examine the foundation of many rules of the common law which have always passed unquestioned.

I concur fully in the doctrine that a municipal corporation or body is not liable to an individual damnified by the exercise, or the failure to exercise, a legislative authority; and I also agree that the political divi-

sions of the State, which have duties imposed upon them by general law without their assent, are not liable to respond to individuals in damages for their neglect, unless expressly made so by statute. Upon these two points the authorities are generally agreed, and the result is well stated in the opinion of the Chief Justice.

The question for us to decide is, whether a different rule applies where a municipal corporation exists under a special charter which confers peculiar powers and privileges, and imposes special duties, from that which prevails in the case of towns and counties. The authorities have found reason for a distinction, and I am not yet prepared to say that their reason is baseless.

The leading case on the subject is *Henley v. The Mayor and Burgesses of Lyme Regis,* which went from the Common Pleas through the King's Bench to the House of Lords, and is reported in *5 Bing., 91; 3 Barn. and Ad., 77,* and *1 Bing. N. C., 222.* In that case it appeared that the King, by letters patent, had granted to the Mayor and Burgesses of Lyme Regis the borough or town of that name, and also the pier, quay, or cob, with all liberties, profits, etc., belonging to the same, and remitted a part of their ancient rent, expressing his will therein, that the said Mayor and Burgesses and their successors, all and singular, the buildings, banks, sea-shores, etc., within the. said borough, or thereunto belonging, or situate between the same and the sea, and also the said pier, etc., at their own costs and charges, should repair, maintain and support. All the courts held that the defendants, having accepted the charter, became legally bound to repair the buildings, banks, etc., and that as this obligation was one which concerned the public, an action on the case would lie against them for a direct and particular damage sustained by an individual in consequence of a neglect to perform it. The

reasoning was, that the things granted by the charter were the consideration for the repairs to be made; and that the corporation, by accepting the letters patent, bound themselves to do these repairs. This decision is the unquestioned law of England to the present time, and is referred to with approbation in the American cases.

I do not understand this decision or the previous and analogous one of *Mayor of Lynn v. Turner, Cowp., 86,* to be questioned in the present case; but it is contended that neither is applicable, because the grant was one for the benefit of the corporators, which they might accept or refuse at their option, but which, if accepted, must be taken *cum onere,* and the acceptance was in the nature of a covenant to perform the duty imposed. Moreover, that duty, it is said, was individual, not governmental; and the responsibility for failure to perform it would not depend on negligence, notice, or any other contingency not expressed in the covenant; and in any point of view it is argued that these decisions have no more bearing upon the question of public duties and public responsibilities, than if the grants to the corporations in these cases had been made to individual residents.

This is not the first time that this view of the cases referred to has been presented to the courts. It was very fully examined by Mr. Justice Selden in *Weet v. Brockport, 16 N. Y., 161, note,* and in his opinion there was nothing in it which should exempt municipal corporations from the principle declared, even when the neglect of duty relates to a governmental power. " It is well known," he very truly says, that " charters are never imposed upon municipal bodies except at their urgent request. While they may be governmental measures in theory, they are, in fact, regarded as privileges of great value, and the franchises they confer are usually sought for

with much earnestness before they are granted. The surrender by the Government to the municipality of a portion of the sovereign power, if accepted by the latter, may with propriety be considered as affording ample consideration for an implied undertaking on the part of the corporation, to perform with fidelity the duties which the charter imposes." *Ibid., 171.*

Now it does not appear to me to be a sufficient answer to this position, that the State *might*, if it saw fit, impose a municipal charter upon the people without their consent and even against their remonstrance. That is not the ordinary course of events, and the question for us to consider is—What is the legal significance of things as they actually occur? We find, as matter of fact, that people apply for a charter conferring such privileges as they deem important, in view of their actual circumstances, and that many of these privileges are quite superior to, and more valuable than, those possessed by the people generally. When the Legislature grants these privileges it imposes concurrent duties. What is the fair construction of these acts of the people and the Legislature respectively,—the people in soliciting the privileges, and the Legislature in attaching the duties to the grant which it makes? This is the question which we are to consider.

The New York courts have invariably held that when the people of the municipality accepted the charter which they had thus solicited, a contract was implied on their part to perform the corporate duties. They have always denied that in this respect there was any difference between a municipal corporation and a private corporation or private individual, who had received from the sovereignty a valuable grant, charged with conditions.—*Hutson v. N. Y., 9 N. Y., 163 ; Weet v. Brockport, 16 N. Y., note, 161 ; Conrad v. Ithaca, 16 N. Y., 158 ; Storrs v. Utica, 17 N.*

21 MICH.—P.

*Y., 104; Mills v. Brooklyn, 32 N. Y., 489; Lee v. Sandy Hill, 40 N. Y., 442.* The same decision has frequently been made in other States. *Meares v. Wilmington, 9 Ired., 73; Pittsburgh v. Grier, 22 Penn. St., 63; Erie v. Schwingle, Ibid., 388; Ross v. Madison, 1 Ind., 281; Stackhouse v. LaFayette, 26 Ind., 17; Smoot v. Wetumpka, 24 Ala., 112; Browning v. Springfield, 17 Ill., 143,* in which the question is very fully and carefully considered by Mr. Chief Justice Scates. *Commissioners v. Duckett, 20 Md., 468; Sawyer v. Corse, 17 Grat., 241; Richmond v. Long, Ibid., 375; Bigelow v. Randolph, 14 Gray, 541,* which, though not an express authority, recognizes the doctrine: *Jones v. New Haven, 32 Conn., 1; Cook v. Milwaukee,* recently decided by the Supreme Court of Wisconsin, and to be found in *9 Law Reg., N. S. 263* [*24 Wis., 270*].

The same question has also been frequently and fully examined by the Supreme Court of the United States, and no doctrine is more firmly settled in that Court than that municipal corporations are liable for negligence· in cases like the present. It will be sufficient, perhaps, to refer to the case of *Weightman v. Washington, 1 Black, 39,* in which the English and American cases were examined, but the same question has frequently been brought to the attention of the Court since, and uniformly with the same result.

And it is remarkable that in all the cases which have upheld this doctrine there has scarcely been a whisper of judicial dissent. It would be difficult to mention another so important question, which has been so often, so carefully, and so dispassionately examined, and with such uniform result. In no State is the doctrine of *Henley v. Mayor, etc., of Lyme Regis,* as applied in *Weet v. Brockport,* denied except in New Jersey, and in that State the authorities I have referred to seem to have been passed over in silence and perhaps were not observed.

We are asked, therefore, to overrule a rule of law which is safe, useful and politic in its operation, and which has been generally accepted throughout the Union, not through inadvertence or by surprise, but after careful, patient and repeated examination upon principle, by many able jurists, who have successively given due consideration to the fallacies supposed to underlie it. For my own part I must say that the fallacies are not clearly apparent to my mind, and I therefore prefer to stand with the authorities. And I deem it proper to add also, that, inasmuch as the rule of responsibility in question seems to me a just and proper one, I should be inclined, if my judgment. of its logical soundness were otherwise, to defer to the previous decisions, and leave the Legislature to alter the rule if they should see fit.