CATHARINE AMPERSE v. THE CITY OF KALAMAZOO.

[See *post*, 534.]

*Municipal corporations—Neglect of council to approve liquor bonds*
*—Liability of ·city.*

A city is not liable for the willful refusal of its common council to
approve of a liquor bond pursuant to the statute of this State.

Error to Kalamazoo.    (Mills, J.)    Argued April 18, 1889.
Decided June 14, 1889.

Case for refusal to approve a liquor bond.    Plaintiff brings
error.    Affirmed.    The facts are stated in the opinion.

*O. T. Tuthill,* for appellant.

*E. S. Roos* ( *William G. Howard,* of counsel), for defendant.

LONG, J.    This cause came on to be heard in the circuit
court for the county of Kalamazoo without a jury, and the
court, having heard the offer of proof made by the plaintiff,
directed judgment to be entered in favor of defendant.

Plaintiff brings the case here by writ of error.

The plaintiff offered proofs tending to show that the
plaintiff, the wife of Marenus Amperse, resided at the city of
Kalamazoo, and was desirous of engaging in the business of
the sale of spirituous and malt liquors at retail in the grocery
store occupied by her husband in said city.

That she is of the age of 40 years and upwards; and on or
about May 20, 1885, she presented a bond in conformity with
the requirements of the statute, with two sufficient sureties,
in the sum of $3,000,—that being the sum fixed as the
penalty of such bonds by the common council of said city.

That the bond took its regular reference to the committee

on license, and at the regular meeting of the council, on the twenty-fifth of that month, the committee reported thereon as being a good bond financially, but made no recommendation upon it; that at that time the mayor of said city stated that there were certain petitions on file against granting a license to the plaintiff and her husband to carry on the business of retailing spirituous and malt liquors.

That by request of one of the members of the council the city attorney was asked to state his opinion as to the matter of the petitions, and the right of the plaintiff to have granted to her a license and the approval of the bond, at which the city attorney stated to the council that the statute made no distinction between individuals; that any person who could present the requisite bond was entitled under the law to have his bond approved by the council, and licensed thereby to engage in the sale of liquors; and that the council acting fairly under the law and upon the report of the committee that the bond was found to be good in all respects, and there being no objection to the sureties, their financial responsibility and efficiency, they were bound to approve it.

That, on being interrogated by a member of the council what would be the consequences if they did not, he answered that it was at the risk of a possible legal remedy to the petitioner, or any applicant, by an action on the case against the members of the council individually for a willful refusal to perform their duty in approving said bond reported upon by the committee to be good and without any objection.

That thereupon George Winslow, a member of the council, made the following motion:

"Alderman Winslow moved that the bond of the petitioner be disallowed; that, if the instructions of the city attorney was law, he wanted to be put on record as going against the law, and taking the chances in disapproving said bond; that the petitions on file against granting your petitioner a license and approving her bond, for the reasons stated, were enough for him, and that the council ought to be governed thereby;

that the petitions ought to be respected, and control the action of the council in this case.

"The motion then having been made by Alderman Winslow, and seconded, being put to a vote, the council voted that the bond be disapproved."

That the petitions referred to against the approval of the bond state that plaintiff and her husband kept a disorderly house in the past year, and that the sale of liquor in that neighborhood is dangerous to real estate; and the council, when acting in disapproving said bond, stated in its session that the reasons set forth in such petitions were its reasons for disapproving the bond, and made no pretense of any other reason or cause.

That at a meeting of the council held on June 1 thereafter the plaintiff, by her attorney, appeared before it, and asked the council to give its reasons for disproving the bond, and, if there was any other objection than the matter of such petitions, to state the same, so there would be no mistake as to the cause of rejecting of said bond, and again asked the council to approve the same, and again presenting the said bond to the council; whereupon the council refused to approve the same, or make any further objection thereto.

Counsel for plaintiff further offered to show that the matter set forth in the petitions, that plaintiff and husband kept a disorderly place, was what governed the council in disapproving the bond, and that it was not on account of any defect in the bond, or the insufficiency of the sureties thereon; and that the plaintiff was ready, upon the approval of the bond, to pay the tax required by the statute to the city treasurer to enable her to carry on the business.

That upon such refusal of the council to approve the bond a petition was made by the plaintiff to the Supreme Court for a *mandamus*, and on June 8 an order was made by said Court to the common council to show cause why the writ should not issue, which was served on the mayor of the city

on June 9; that thereafter no action was taken by the council until August 19, when the committee again reported without recommendation, and the bond was again disapproved; that at the October term of the Supreme Court the cause on the petition for *mandamus* was argued, and in the January term, 1886, of that Court a decision was rendered granting a peremptory *mandamus* upon the council for the approval of the bond,[1] and on January 20, 1886, the bond which had been presented by the plaintiff on May 20, 1885, was approved by the action of the council, and the tax was paid a few days thereafter to the city treasurer.

That from the twentieth day of May, 1885, when the bond was presented for approval and the license asked, a period of nine months and over, the plaintiff was deprived from carrying on any business, and the tax which was paid from that time, amounting to about $150, was lost; that during that time the plaintiff would have in the business received from the sale of spirituous liquors, for whisky, in profits, $80 a barrel, the sum of $960, about 250 kegs of beer, at $2.50 a keg profit, and other spirituous liquors, such as brandy, wine, and gin, a profit of about $80, and the costs of the proceedings had in the course of the *mandamus*, which would have been in the sum of about $2,000.

Upon this offer of proof being made, the court asked plaintiff's counsel if he claimed that the records of the council show that the bond was disapproved because the plaintiff kept a disorderly house. To this inquiry counsel stated:

"The records show nothing to show that it was disapproved for that reason. I offer this return made by the city attorney to the city council, for the purpose of showing their reasons for refusing it."

The court then asked counsel:

---

[1] See *Amperse v. City of Kalamazoo*, 59 Mich. 78.

"You claim that outside of the records you are entitled to show what was said?"

To which counsel responded :

"I claim we have the right to show all that was said and all that was done by the council in the disapproval of this bond; the reasons they gave for it."

From an inspection of the return made by the council to the order to show cause, which plaintiff's counsel put in evidence, it appears that when the bond was presented to the council it was referred to the committee on license, by whom it was referred back to the council without recommendation; the committee stating in referring it back that they had no recommendation to make. This report was adopted, and Mr. Ihling, a member of the council, offered the following resolution, which was unanimously adopted :

"Moved that the liquor bond of Catharine Amperse be disapproved."

And in this return the council say that this embraces its entire action in regard to the liquor bond of the plaintiff. The proofs tendered by plaintiff's counsel of the action of the common council or any of its members, aside from this action as stated in such return, were not, therefore, matters of record; but counsel claimed the right to supplement the record by parol proofs showing just what was said and done by the council and its several members at its meetings, as well as the advice given there by the city attorney.

The foregoing is substantially all that was claimed by counsel for plaintiff, as making a cause of action, and upon which he claimed a right of recovery against the city.

Even if such parol proofs were competent to supplement the record of the council it would not constitute a cause of action against the city. A municipal corporation cannot be made liable in any such action. Municipal officers are in no such sense municipal agents that their negligence is the negligence of the municipality. The city cannot be made to

respond in damages for the torts of its officers, even if such wrongs could be redressed against the officers themselves.

It is true, if the act which is done by a municipal corporation would be tortious if done by a natural person, the corporation is held liable for it to the same extent and for the same reason, but no such body can be made responsible for official neglect involving no active misfeasance. It is only where corporations have been guilty of some positive mischief produced by active misconduct that they have been held liable, unless there be a valid contract creating or a statute declaring the liability. Here the complaint is of a wrong done the plaintiff, not by an act of the council, but by its refusal to act,—its refusal to approve the bond. No active misfeasance is charged, but a willful neglect of duty.

It cannot matter, so far as the liability of the city is concerned, whether the neglect was willful or otherwise. There is no common-law liability, and there is no statute in this State which creates any.

Judge Dillon, in his work on Municipal Corporations § 754, lays down the rule that a municipal corporation is not responsible for an omission or refusal to enact ordinances or by-laws, in the absence of a valid contract creating or a statute declaring a liability therefor, nor if it enacts them is it liable for damages arising from a neglect to enforce them. In *City of Detroit v. Blackeby*, 21 Mich. 113, it was said by this Court:

"It has been uniformly held  *  *  *  that public officers, whose offices are created by act of the legislature, are in no sense municipal agents, and that their neglect is not to be regarded as the neglect of the municipality, and their misconduct is not chargeable against it, unless it is authorized or ratified expressly or by implication."

This same principle was recognized in *McCutcheon v. Homer*, 43 Mich. 483 (5 N. W. Rep. 668).

This rule is sustained by the decisions of the courts of the several states wherever the question has arisen.

The court was correct, under the circumstances, in directing judgment for defendant.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.