THE CITY OF OMAHA, PLAINTIFF IN ERROR v. ELLEN OLM-
STEAD, DEFENDANT IN ERROR.

1. **Incorporation of Cities.** An act providing for the incorpora-
tion of a city must be accepted as a whole; and the city in accept-
ing the benefits derived therefrom, must perform the duties
required by law.

2. ———. The corporate franchise is a valuable privilege and is a
sufficient consideration for the duties which the law imposes.

3. **Jurors in cases in which a Municipal Corporation is a
party.** The object of the law is to secure fair, impartial, un-
biased jurors; but the mere interest of a tax payer and resident
of a city is not in itself, under ordinary circumstances, sufficient
to disqualify him from acting as a juror in a case in which the
city is interested.

ERROR from the district court of Douglas county.

Ellen Olmstead, as plaintiff in the court below, brought
suit to recover damages for injuries alleged to have been
sustained by her in stepping into a hole in a sidewalk, on
the north side of Douglas street, between Ninth and
Tenth streets, in the city of Omaha.

All material allegations of the petition are denied by
the answer. And it is further alleged that any injury
received by plaintiff was occasioned by reason of her own
carelessness. The time of the accident, as alleged, was
about 8 o'clock in the evening of December 1, 1873.

A trial was had at the February term, 1876, at which
a verdict was returned for the plaintiff, fixing her dam-
ages at five thousand dollars, which verdict was set aside
and a new trial granted on the ground that the evidence
was insufficient to sustain it.

The case again came on for trial at the October term
of the court, before POUND, J., and a verdict was returned
by the jury for the plaintiff, fixing her damages at
$5,500. A motion for a new trial was duly made, which

was overruled and a judgment entered upon the verdict. To reverse this judgment the defendant in the court below came here upon petition in error.

On the trial in the court below Ferdinand Streitz was regularly called as a juror, and in response to questions put by defendant in error, made answers showing that he was a duly qualified juror in all other respects, but that he was a resident taxpayer of the city of Omaha— whereupon defendant in error challenged said juror for cause, in that he was a taxpayer in the city of Omaha, and hence an interested party, which challenge the court sustained, and the juror was excused, to which the plaintiff in error duly excepted. Other jurors were challenged for cause, on the same ground, by both parties to the suit.

*John M. Thurston*, for the plaintiff in error.

I. Is a resident taxpayer of a municipal corporation disqualified thereby from sitting upon a jury in which the city is a party? We submit not. Dillon on Municipal Corporations, 23 and 30.

The interest of a person in the result of a suit that will disqualify him as a juror, must be a direct pecuniary interest. Such is not the interest of a tax-paying citizen of a municipal corporation, as created by our laws. His interest is too remote and uncertain. He is no part of the corporation—he may even sue the corporation and recover judgment, though his own property may indirectly and remotely pay a portion of it. The general experience of mankind has been that so remote an interest cannot affect in any material degree the judgment of a juror competent in other respects, and the current of decisions in our country is tending to abrogate the harshness of many of the common law precedents, which are neither harmonious with our system of government nor with the age in which we live.

Those cases where citizens and taxpayers are held to be competent judges, jurors and witnesses in municipal courts, are based as much upon the remoteness of the alleged disqualifying interest as upon the necessities of the case. And experience teaches us that as fair and just verdicts are given by taxpayers in cases where the municipality is a party, as by non-residents, whose natural prejudices are excited and aroused against the corporation. *Corwein v. Hames*, 11 Johns., 76. *Thomas v. Mount Vernon*, 9 Ohio, 290. *City Council v. Pepper*, 1 Rich. (S. C.), 364. *City Council v. King*, 4 McCord (S. C.), 487. *Hill v. Wells*, 6 Pick., 104. *Commonwealth v. Emery*, 11 Cushing, 406.

II. A municipal corporation, organized under a general law, as in this state, is not liable for injuries resulting from a neglect of the corporate officers, to repair a defect in the sidewalk. In order to properly raise this question, the court below was asked to instruct the jury as follows: "A municipal corporation organized under the general laws relating to cities of the first class is not liable for damages resulting from a defect in a sidewalk, caused by decay or the unlawful act of a third party." This instruction the court refused to give and defendant duly excepted.

We admit that for acts of misfeasance by which a traveler along a street of a city is injured, an action lies, but does it in the case of a mere nonfeasance; a mere failure to repair a defect in the street or sidewalk, caused by wear, decay, or the act of a third person?

It has always been held in England and in this country, with the exception of perhaps one state (Maryland), that no such liability rests upon public corporations, such as counties and towns, which are created for public purposes, where incorporation is forced upon them, and where the law creating them can in no way be construed as in the

nature of a contract. Cooley's Constitutional Limitations, 247. Dillon on Municipal Corporations, 762. *Mower v. Leicester*, 9 Mass., 247. *Bartlett v. Crosier*, 17 Johns., 439. *Farnum v. Concord*, 2 N. H., 392. *Baxter v. Winoski Turnpike*, 22 Vt., 123. *Beardsley v. Smith*, 16 Conn., 375. *Commissioners v. Martin*, 4 Mich., 557. *Lorrillard v. Monroe*, 11 N. Y., 392. *Reardon v. St. Louis*, 36 Mo., 555. *Sherbourne v. Yuba Co.*, 21 Cal., 113. *State v. County of Hudson*, 1 Vroom, 137. *Treadwell v. Commissioners*, 11 Ohio St., 190.

All of these cases and a vast array of others follow the case of *Russell v. Men of Devon*, 2 T. R., 667, and are unanimous in holding that no such liability exists. *Detroit v. Blackeby*, 21 Mich., 84.

*Baldwin & Smythe*, for defendant in error.

Is the city liable for injuries caused by reason of defective sidewalks? We invite attention to the following propositions submitted upon the part of the plaintiff below, and which were given by the court to the jury as the law in the case, in his charge.

1st. When a public body is clothed by statute with power to do an act which the public interests require to be done, and the means for the performance are placed at its disposal, the execution of the power may be insisted upon as a duty, although the statute conferring it be only permissive in its terms.

2d. That in the absence of an express statute, imposing the duty and declaring the liability, municipal corporations proper having the power ordinarily conferred upon them, respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty.

The learned counsel for the city, admits that the weight of authorities is with us, but claims that they are not founded upon the better reasons. It is a little remarkable that the eminent jurists comprising the several courts of last resort, in most of the states of the Union have failed to see these reasons as the *paid attorney* of a corporation sees them. *5 Seld., 163. 3 Hill, 612. 1 Denio., 595. 3 New York, 463. 16 Id., 158. 45 Id., 129. 25 Ill., 535. 24 Ala., 112. 9 Ired., 73. 20 Maryland, 468. 24 Wis., 191. 34 Id., 285. 17 Gratt., 375. 12 Ohio State, 377. 1 Black, 39. 2 Id., 590. 4 Wall., 194, 435, 658.

MAXWELL, J.

I. The plaintiff in error is organized as a city, under the provisions of " An act to incorporate cities of the first class."

Section fifteen of the act gives to the mayor and council the care, management and control of the city, its property and finances. The twenty-fourth sub-division of section fifteen, grants the power " to care for, and control, to name and re-name streets, avenues, parks and squares within the city, to provide for the opening and vacating of streets, avenues and alleys within the city, under such restrictions and regulations as may be provided by law."

Section forty-one provides that " the council shall have power to open, extend, widen, grade, pave, or otherwise improve and keep in good repair or cause the same to be done in any manner they may deem proper, any street, avenue or alley within the limits of the city, and may also construct and repair, or cause and compel the construction and repair of sidewalks in such city, of such material and in such manner as they may deem proper and necessary, and to defray the cost and expense of such improvement on any of them, the mayor and council

of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to, and abutting upon the street, avenue, alley or sidewalk thus graded, paved, extended, constructed or otherwise improved or repaired."

Section forty-nine provides that "the council shall have power to provide for keeping sidewalks clean and: free from all obstructions and accumulations, and may, provide for the assessment and collection of taxes on unoccupied real estate, and for the sale and conveyance thereof to pay the expenses of keeping the sidewalks, adjacent to such real estate clean and free from obstructions and accumulations as herein provided."

By an act approved November 4, 1858, the city of Omaha was incorporated under a special charter, which conferred certain benefits and privileges upon the city.

On the 8th day of February, 1869, an act to incorporate cities of the first class became a law. The first section provides that all cities within this state having, three thousand legal voters shall be deemed cities of the first class.

Section sixty-four provides that all rights and property. of every description which were vested in any municipal corporation under its former organization, shall be, deemed and held to be vested in the same municipal corporation under the organization made by this act. Various amendments to the act have since been made by the legislature, which do not require examination.

It will not be denied that an act providing for the incorporation of a city must be accepted as a whole, and that the city in accepting the benefits derived therefrom, must perform the duties required by law. The corporate franchise is a valuable privilege; and is a sufficient consideration for the duties which the law imposes. The state grants to the municipality a portion of its sovereign authority, in greater powers of self-government than are·

given to *quasi* corporations, in increased facilities for the acquisition and control of corporate property, and in the special authority over, and control of, the streets, and their adaptation to the wants and convenience of the citizens of the municipality. The acceptance of these privileges is considered as raising an implied promise on the part of the city to perform its corporate duties; and this implied agreement made with the sovereign power enures to the benefit of every individual interested in the proper performance of such duties. Cooley's Con. Lim., 248. *Weet v. Brockport,* 16 N. Y., 161. *Browning v. Springfield,* 17 Ill., 143. *Pittsburgh v. Grier,* 22 Penn. St., 54. *Weightman v. Wash,* 1 Black, 41. *Chicago v. Robbins,* 2 Black, 418. *Neb. City v. Campbell,* Id., 590.

The city has the exclusive control of its streets, and ample means are placed under the control of its constituted authorities to maintain the streets in a safe condition. Under these circumstances the city is liable for its failure to perform its duty.

In *Detroit v. Blackeby,* 21 Mich., 114, it was held (COOLEY, J., dissenting), that the city was not liable. The court say: "In the case of *Eastman v. Meredith,* 36 N. H., 248, the distinction between the English and American municipal corporations is clearly defined. The former often hold special property and franchises of a profitable nature which they have received upon conditions, and which they can hold by the same indefeasable right with individuals. But American municipalities hold their functions merely as governing agencies."

While it is true that in particular instances property and valuable franchises of a profitable nature were conferred upon municipal corporations as a condition for the performance of certain acts; yet it will not be contended that all, or any considerable proportion, of such corporations were thus endowed. Nor will it be claimed

that liability for neglect of duty was restricted to cor-
porations thus benefitted.  I think it will be found on
examination, that as a rule, as valuable privileges and
benefits are conferred by our laws providing for the in-
corporation of cities as were conferred by ancient
charters.

II.  In selecting jurors the object of the law is to secure
fair, impartial, unbiased persons, and it is the duty of
the court, where objection is made, to see that such per-
sons only are permitted to sit on a jury;  but the mere
interest of a tax-payer and resident of a city is not of
itself, under ordinary circumstances, sufficient to dis-
qualify him from acting as a juror in a case in which the
city is interested.  In this case both parties objected to
residents of Omaha as jurors, and the objections were
sustained by the court.  The plaintiff in error, therefore,
is not in a position to insist on the objection.  A fair
jury appears to have been selected, and the questions of
fact fairly submitted to them, and we see no sufficient
ground to disturb their finding.  The judgment of the
district court is therefore affirmed.

JUDGMENT AFFIRMED.