NATHAN C. GOODRICH, APPELLEE, V. UNIVERSITY PLACE ET AL., APPELLANTS.

FILED FEBRUARY 20, 1908. No. 15,083.

1. Cities: CARE OF STREETS: LIABILITY. The making, improving and repairing of streets by a municipal corporation relate to its corporate interests only, and it is liable for its failure to perform its duty.

2. ———: PRIVILEGES: OBLIGATIONS. By accepting the special privileges and powers of taxation, supervision and local government, cities of the second class and villages assume the duties, responsibilities and liabilities flowing therefrom and incident thereto in the same manner and to the same extent as any other muni-

cipality; and such special privileges and powers constitute a sufficient consideration for the obligations and liabilities thus assumed.

3. ——: CARE OF STREETS: LIABILITY. A city of the second class or village has the exclusive control of its streets, and ample means are placed under the control of its constituted authorities to maintain the streets in a safe condition. Under these circumstances, it is liable for its failure to perform its duty.

APPEAL from the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Affirmed.*

*T. M. Wimberley* and *Wilson & Brown,* for appellants.

*R. D. Stearns* and *Billingsley & Greene, contra.*

FAWCETT, C.·

The petition in this case alleges substantially that University Place is a city of the second class and Bethany Heights a village, each duly organized and existing as such under the laws of this state, and that under the laws of this state it was the duty of appellants to keep the streets of such city and village in good order, and at all times to keep the bridges in good repair, and to place barriers and railings along dangerous embankments and declivities along the streets within their corporate limits; that Vine street or the Vine street road lies within the corporate limits of said defendants, and as a part of said road there was a bridge which was allowed to get out of repair and so remain; that there was a dangerous embankment near the bridge without barriers or railings or other protection, which was permitted to remain in such dangerous condition, and that plaintiff, while driving along and over said street and bridge, by reason of the defective and dangerous condition of the bridge and embankment, was thrown out of his wagon and down the embankment, and injured. There was a trial to a jury, which returned a verdict in favor of plaintiff for $500. From a judgment on the verdict this appeal is prosecuted.

Counsel for appellants in their brief state: "We wish

to submit this case in this court upon the single proposition of the liability of cities of the second class and villages in this state for negligence in failing to keep their streets and bridges in repair.  *  *  *  If the law imposes such a liability the appellants are content with the verdict and judgment; but they contend that under the law the facts stated in the petition impose no liability upon them, and for this reason they ask that the judgment be set aside and the cause of action dismissed." Counsel for appellants plant themselves squarely upon the doctrine that the common law imposes no liability upon either counties, townships, school districts, or municipalities for injuries to individuals growing out of defective highways, and that, such being the fact, no such liability exists unless imposed by statute; that such right in the individual as against the public is in derogation of the common law, and does not exist unless it is conferred by express terms of the statute, or by necessary implication from the terms of such statute, and that in this state there is no statute granting any such right in express terms as to cities of the second class and villages, nor any statute concerning them from the terms of which it can be said that such liability may be implied. The law governing cities of the second class and villages, in force at the time of the injury complained of, is found in article I, ch. 14, Comp. St. 1905. The sections of that chapter bearing on the question under consideration are as follows:

Sections 21 and 67*b*. "The overseer of streets shall, subject to the orders of the mayor and council (board of such village), have general charge, direction, and control of all work on the streets, sidewalks, culverts, and bridges of the city (or village), and shall perform such other duties as the council (board) may require (direct)."

"Section 69. In addition to the powers hereinbefore granted cities and villages under the provisions of this chapter, each city and village may enact ordinances or by-laws for the following purposes:  *  *  *  Subd. III. To provide for the grading and repair of any street,

avenue or alley, and the construction of bridges, culverts and sewers. * * * Subd. IV. To construct sidewalks; to curb, pave, gravel, macadamize and gutter any highway, street, avenue or alley therein (to grade from lot line to curb line of its streets and highways for sidewalks and parks; to park any highway, street, avenue or alley, and to maintain parks thereon); and to levy a special tax ·on the lots and parcels of land abutting on such highway, street, avenue or alley, to pay the expenses of such improvements. But, unless a majority of the resident owners of the property subject to the assessment for such improvements petition the council or trustees to make same, such improvements shall not be made until three-fourths of all the members of such council or board of trustees shall by vote assent to the making of the same."

"Section 77. The city council or board of trustees shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares, and commons within the city or village, and shall cause the same to be kept open and in repair, and free from nuisances."

We are unable to discover any substantial difference between the powers and privileges given to, and obligations and liabilities imposed upon, cities of the second class and villages, and municipalities of any other class. The same rules of law must therefore be applied to all. In their brief counsel for appellants rely upon *Goddard v. City of Lincoln,* 69 Neb. 594; *Schmidt v. City of Fremont,* 70 Neb. 577; *City of Detroit v. Blackeby,* 21 Mich. 84, together with the quotation therein from *Eastman v. Meredith,* 36 N. H. 284, and *Roberts v. City of Detroit,* 102 Mich. 64. We do not think either of the Nebraska cases cited is in point here. In *Schmidt v. Fremont* the only questions considered were whether a party who had been injured by a defective sidewalk was required to give notice to the mayor or city clerk within 30 days after the occurrence of the accident or injury; and, second, whether incapacity, caused by his injury, to give the notice would be a sufficient excuse for noncompliance. We decided the for-

mer of those two questions in the affirmative, and the latter in the negative. Nothing else was considered or decided in that case. In *Goddard v. City of Lincoln* the question was whether, under section 110, art. I, ch. 13, Comp. St. 1901, the city of Lincoln could be held liable for injuries unless a notice in writing of the defect causing the injury had been filed with the city clerk at least five days before the injury occurred. We held that the legislature had a perfect right to thus limit a person's right to recover against a city. In the first paragraph of the syllabus it is said: "The liability of a city, for injuries resulting from defective streets or sidewalks, rests exclusively upon express or implied provisions of the statute, and it is competent for the legislature to limit such liability or remove it entirely." That such power is vested in the legislature there is no room for doubt; but that case does not decide that a municipality is not liable to one who is injured by reason of the negligence of such municipality in keeping its streets and sidewalks in reasonably safe condition for travel, unless such liability is imposed by statute. Indeed, we think there is force in the argument of counsel for appellee that "the language of the court implies that there is a liability now, as a liability could not be 'limited' or 'entirely removed' if it did not exist." We have read the opinion with great care, and are unable to find anything in it to sustain the position of appellants in this case. On the contrary, on page 597, the opinion cites *City of Omaha v. Olmstead,* 5 Neb. 446, and says: "The principle announced in that case has since been frequently applied." An examination of *City of Omaha v. Olmstead* shows that the question under consideration in this case was squarely before us in that. In the opinion we say: "It will not be denied that an act providing for the incorporation of a city must be accepted as a whole, and that the city in accepting the benefits derived therefrom must perform the duties required by law. The corporate franchise is a valuable privilege, and is a sufficient consideration for the duties which the law imposes. The state

grants to the municipality a portion of its sovereign authority, in greater powers of self-government than are given to *quasi* corporations, in increased facilities for the acquisition and control of corporate property, and in the special authority over, and control of, the streets, and their adaptation to the wants and convenience of the citizens of the municipality. The acceptance of these privileges is considered as raising an implied promise on the part of the city to perform its corporate duties; and this implied agreement made with the sovereign power inures to the benefit of every individual interested in the proper performance of such duties (citing a number of cases). The city has the exclusive control of its streets, and ample means are placed under the control of its constituted authorities to maintain the streets in a safe condition. Under these circumstances, the city is liable for its failure to perform its duty." The opinion then considers *City of Detroit v. Blackeby, supra,* and the quotation which the Michigan court therein makes from *Eastman v. Meredith, supra,* upon which appellants chiefly rely. In this connection the opinion states: "In *Detroit v. Blackeby,* 21 Mich. 84, 114, it was held (Cooley, J., dissenting) that the city was not liable. The court say: 'In the case of *Eastman v. Meredith,* 36 N. H. 248, the distinction between the English and American municipal corporations is clearly defined. The former often hold special property and franchises of a profitable nature which they have received upon conditions, and which they can hold by the same indefeasible right with individuals. But American municipalities hold their functions merely as governing agencies.' While it is true that in particular instances property and valuable franchises of a profitable nature were conferred upon municipal corporations as a condition for the performance of certain acts, yet it will not be contended that all, or any considerable portion, of such corporations were thus endowed. Nor will it be claimed that liability for neglect of duty was restricted to corporations thus benefited. I think it will be found on examination

that, as a rule, as valuable privileges and benefits are conferred by our laws providing for the incorporation of cities as were conferred by ancient charters."

The above, then, is "the principle announced," which, in *Goddard v. City of Lincoln, supra,* we say "has since been frequently applied." Our dissent from the rule announced in *City of Detroit v. Blackeby, supra,* and the other Michigan cases cited, does not stand alone. The supreme court of the United States in *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. ed. 440, say: "It is denied that a municipal corporation (as distinguished from a corporation organized for private gain) is liable for the injury to an individual arising from negligence in the construction of a work authorized by it. Some cases hold that the adoption of a plan of such a work is a judicial act, and, if injury arises from the mere execution of that plan, no liability exists. *Child v. City of Boston,* 4 Allen (Mass.), 41; *Thayer v. City of Boston,* 19 Pick. (Mass.) 511. Other cases hold that for its negligent execution of a plan good in itself, or for mere negligence in the care of its streets or other works, a municipal corporation cannot be charged. *City of Detroit v. Blackeby,* 21 Mich. 84, is of the latter class, where it was held that the city was not liable for an injury arising from its neglect to keep its sidewalks in repair. The authorities establishing the contrary doctrine that a city is responsible for its mere negligence are so numerous and so well considered that the law must be deemed to be settled in accordance with them." Mr. Justice Hunt, who wrote the opinion, then gives a long line of English and United States authorities sustaining his position. It will be seen, therefore, that *City of Detroit v. Blackeby, supra,* is not only discredited by this court in *City of Omaha v. Olmstead, supra,* but is declared by the supreme court of the United States to be contrary to the great weight of authority. In *Burke v. City of South Omaha,* 79 Neb. 793, we again had occasion to consider *City of Omaha v. Olmstead, supra,* and *Barnes v. District of Columbia, supra,* and, upon such consideration,

the rule announced in *City of Omaha v. Olmstead* was reaffirmed. In the opinion in that case DUFFIE, C., very clearly draws the distinction which is decisive of this case, in these words: "When the state imposes upon an incorporated city the absolute duty of performing some act which the state may lawfully perform, and pertaining to the administration of government, the city, in the performance of that duty, may be clothed with the immunities belonging to the mere agent of the state; but, when the city is merely authorized by way of special privilege to perform such an act in part for its corporate benefit and the benefit of its inhabitants, the city is not clothed with these immunities, and is liable to be sued for injuries inflicted through its negligence in the performance of such an act." The syllabus of that case states the rule thus: "The making, improving and repairing of streets by a municipal corporation relate to its corporate interests only, and it is liable for the wrongful or negligent acts of its agents in performing such duties." Adapt the phraseology of that syllabus to the facts in the case at bar, and we have the rule: The making, improving and repairing of streets by a municipal corporation relate to its corporate interests only, and it is liable for its failure to perform its duty. In that case the negligence of the defendant consisted of the negligence of its foreman while repairing one of its streets; in the case at bar the negligence consisted of the failure of defendants to repair the street. As will be seen, the rule is the same in either case.

While the exact question of the liability of cities and villages, without an express statute creating such liability, and the rule at common law in relation thereto, has, so far as we have been able to discover, never been considered in this court except in *City of Omaha v. Olmstead*, *supra*, we have in numerous cases held such cities and villages liable in the absence of such express statute. In *City of Ord v. Nash*, 50 Neb. 335, it is said: "Where a city or other municipality grades or otherwise improves

any portion of a street for the purpose, and with the result, of inducing public travel thereon, there is a resulting duty to keep such portion of the street in repair and a consequent liability for the failure to do so." In *Wahoo v. Reeder*, 27 Neb. 770, we say: "A person passing over a public sidewalk in a village, which sidewalk was elevated from one to three feet above the ground, stepped into a hole in such walk and was permanently injured. *Held,* That a village was liable for such injury in the same manner as a city." In *Village of Ponca v. Crawford*, 23 Neb. 662, the village was held liable for an injury sustained by a stranger who, while passing along one of its streets between the post office and one of the principal hotels, was injured by reason of a break in the sidewalk. In *City of Plattsmouth v. Mitchell*, 20 Neb. 228, where the sidewalk from which the injury resulted was constructed on a public street by an abutting property owner, without any direction or order by the officers of the city, we held: "The fact of such construction by the property owner without authority will not relieve the city from liability for damages to persons injured thereon without fault, if after the construction of such walk the city assumes jurisdiction over it and orders repairs to be made prior to an accident. Nor will such city be relieved from liability, even though it does not assume such jurisdiction, if the walk is in a public street in constant use, and in a line of other sidewalks constructed by direction of the city, or over which it has control." As late as March 21, 1907, in *Brown v. Village of Pierce*, 78 Neb. 623, we reversed a judgment for defendant for errors in the instructions, and remanded the case for another trial, thereby sustaining plaintiff's right to maintain an action for injuries received by reason of a defect in the sidewalk. In none of the above cases was there any express statute making the cities and villages liable for their negligence in the care of their streets to persons injured by reason thereof. The rule in harmony with the weight of authority seems to be as stated by MAXWELL, J., in *City of Omaha v.*

*Olmstead, supra,* that a corporate franchise is a valuable privilege and is a sufficient consideration for the duties which the law imposes; that an act providing for the incorporation of a city or other municipality must be accepted as a whole, and that a city or other municipality in accepting the benefits derived therefrom must perform the duties required by law; that acceptance of these privileges is considered as raising an implied promise on the part of the city or other municipality to perform its corporate duties, and that this implied agreement made with the sovereign power inures to the benefit of every individual interested in the proper performance of such duties; that the city or other municipality has the exclusive control of its streets, and ample means are placed under the control of its constituted authorities to maintain the streets in a safe condition, and that under these circumstances the city is liable for its failure to perform its duty. Tersely stated, we hold that, by accepting the special privileges and powers of taxation, supervision and local government, cities of the second class and villages assume the duties, responsibilities and liablities flowing therefrom and incident thereto in the same manner and to the same extent as any other municipality, and that such special privileges and powers constitute a sufficient consideration for the obligations and liabilities thus assumed.

We recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.