MARK UPDIKE, APPELLEE, v. CITY OF OMAHA, APPELLANT.

FILED JUNE 10, 1910. No. 16,014.

Municipal Corporations: DEFECTIVE STREETS: NOTICE. Section 207 of the act governing cities of the metropolitan class (Comp. St. 1907, ch. 12a), requiring written notice of defective public ways or sidewalks thereof to be filed with the clerk five days before the occurrence of the injury complained of, has no application to defects caused by the city itself in negligently constructing a sewer in one of the streets of the city.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Harry E. Burnam, I. J. Dunn* and *John A. Rine,* for appellant.

*F. W. Fitch, contra.*

SEDGWICK, J.

While the plaintiff, who was a teamster, was driving along Sixteenth street in the city of Omaha with a loaded

wagon, the pavement gave way and let the wagon down with such force that it threw the plaintiff from his seat to the pavement. He brought this action in the district court for Douglas county to recover from the city the damages which he alleged he sustained by reason of the injuries received in his fall. He recovered in the district court, and the city has appealed.

Plaintiff alleges in his petition that some time prior to the 26th day of July, 1906, the defendant city constructed a sewer along, through and under Sixteenth street from Vinton street south (north) to some point in the vicinity of Pacific or Pierce, and to lay said sewer made an excavation through the center of said street running north and south to the depth necessary to build such sewer, and in filling the excavation after said sewer was constructed the city carelessly and negligently placed the dirt over said excavation in said sewer in such a way as to cause the same subsequently to settle, and that by reason of the careless and negligent omission to properly construct, pack, tamp and harden said earth, the dirt fell in said sewer and gradually settled so as to leave an opening and excavation immediately under the surface of said street, and that afterwards the city relaid or paved the street over said excavation, and placed the paving, consisting of granite block stone, upon and along said excavation in such a way as to hide, cover up and obscure the defect in so packing, filling in, tamping and making solid the dirt underneath said paving along and upon said Sixteenth street, especially in the vicinity of Center and Sixteenth streets; and that on said 26th day of July, 1906, he was employed as a laborer in hauling and delivering sand, and was driving a team attached to a wagon loaded with sand, on which wagon the plaintiff was riding and driving, and being near the center of Sixteenth street in the vicinity of Center street, and while driving along over the paving of said street, because of the defect in so constructing said sewer, and because of covering up the same by paving, both wheels on the left hand side of said

wagon broke through the paving and into the excavation so made by the settling of the dirt and earth in said excavation for said sewer, and that because of said defect in the street and overturning of the wagon the plaintiff was suddenly and without warning and without fault on his part thrown from the wagon to the street; that his right foot and ankle were broken thereby and he was permanently injured.

The plaintiff alleged that after the accident he gave the notice thereof required by statute, but the petition contained no allegation that prior to the said accident the notice had been given of the defect in the street, required by section 207, ch. 12a, Comp. St. 1907. There was a general demurrer to the petition, which was overruled, and the defendant answered admitting that the sewer was constructed along Sixteenth street by the defendant prior to July, 1906, and that the defendant caused the street to be paved, and admitted that the plaintiff was injured to some extent, and that at the time and place where the plaintiff was injured a portion of the paving gave way while the plaintiff was driving a team and wagon over and along the street. The answer alleged that the accident and injury to the plaintiff was not caused by any defect in the street of which the city had, or was chargeable with, notice, or that the city could have discovered by an inspection or examination of the street, and that the defect complained of was not due to any act or omission on the part of the defendant, but was due to causes over which the defendant had no control and for which the defendant was not responsible.

There was a great deal of evidence given by both parties, and the principal question controverted in the evidence was as to the cause of the settling of the earth in the sewer trench. The plaintiff insisted and produced evidence tending to prove that the sewer in question along Sixteenth street, which was laid at the depth of something over 20 feet, and which was constructed about 19 years before the accident, was not properly covered at

the time of its construction; that the earth was carelessly replaced in the sewer trench and was insufficiently tamped, and that this caused the earth to settle, leaving the cavity under the paving. It appears to be conceded by both parties that there was a considerable settling of the earth at many places along this sewer, and that for several years prior to the accident it became necessary for the city in repaving the street to break down the concrete under the paving at various places along the sewer line and fill up the cavity under the paving caused by the settling of the earth from time to time. The defendant insisted that this happened in all parts of the city; that the conditions were such that it was impossible to replace the earth in sewer trenches so as to prevent settling, and that particularly at the place where this accident occurred the settling of the earth was caused not only by natural conditions that could not be avoided, but also by the breaking of a water pipe which allowed large quantities of water to enter the sewer trench beneath the paving. A large part of defendant's brief is devoted to the discussion of the evidence as bearing upon this question, and there is much evidence tending to show that the settling of the earth and the cavity under the paving might have resulted from natural causes and from the action of the water from the broken service pipes. There is also evidence tending to show, as the plaintiff claimed, that the sewer trench was improperly filled, which was the cause of the cavity. The issue so presented was manifestly for the jury and presents no question of law to the court. It is unnecessary to attempt an analysis of the large mass of testimony upon this point. The jury have resolved this question in favor of the plaintiff, and we must therefore consider that the original construction of the sewer by the defendant was improper, and that this was the cause of the cavity under the paving. Whether the original improper construction of the sewer was the proximate cause of the accident is a question of fact and is the subject of much conflicting evidence. This is also a question for the

jury, and must be considered as determined in plaintiff's favor by the verdict.

This brings us to the consideration of the important question in the case. Section 207, ch. 12a, Comp. St. 1907, provides as follows: "Cities of the metropolitan class shall be absolutely exempt from liability for damages or injuries suffered or sustained by reason of defective public ways or the sidewalks thereof within such cities, unless actual notice in writing of the defect of such public way or sidewalk shall have been filed with the city clerk at least five days before the occurrence of such injury or damage. In the absence of such notice, so filed, the city shall not be liable, and in all cases such notice shall describe with particularity the place and nature of the defects of which complaint is made." No written notice of the defect in the paving at the point where the accident occurred had been filed with the city clerk, and the defendant insists that the statute applies in such case and that the plaintiff cannot recover.

The attorneys for defendant have furnished an able discussion which has greatly assisted us in our inquiry as to the true purpose and meaning of the statute in question. It is insisted that unless provided by the statute no liability exists; that it does not require a legislative act to exempt municipalities from liability for defective streets, but it does require a statute to create such liability. The man who claims that the city would be liable must point to the law creating such liability, and there is none except that imposed by the legislative enactment; that, when the legislature by statute fixed such liability with reference to defective streets, the statute must be held to be exclusive; that the legislature may absolutely exempt the municipality from liability, or exempt it unless certain conditions are complied with; that if the legislature keeps within its constitutional right, and the language of the act is plain and free from doubt, there is nothing to interpret, and the courts should accept the law as it is; that it is not for the court to determine

whether it is good or bad, just or unjust, reasonable or
unreasonable; that a city acts through its officers, agents,
or servants, but the city does not act by and through the
doings of every officer, agent and employee; strictly speak-
ing, the city acts officially only through its mayor and
council, and that the city is not charged with "absolute
knowledge" of the acts of a day laborer, a policeman, a
fireman or other employees, and the knowledge of such
persons is not the knowledge of the city; that it was be-
cause the courts held the city to strict accountability,
and held that the act of an agent or employee in many
matters was the act of the city, that the legislature en-
acted section 207; that the city attorney of Omaha drafted
this section of the statute for the express purpose of pro-
tecting the city against claims based upon implied no-
tice of which the city actually had no notice or knowl-
edge; that by this statute the city is not to be held liable
for the negligent conduct of any individual, whether citi-
zen, agent, officer or employee of the city, which causes
a defect in the street, until the city in its official govern-
mental capacity has had its attention directed to the par-
ticular defect by written notice.

While this case has been pending in this court the deci-
sion in *Tewksbury v. City of Lincoln*, 84 Neb. 571, has been
published. In that case a statute substantially the same
as said section 207 was construed. While the case at bar
might be distinguished in some respects from that case,
the defendant has not attempted to do so. The brief, so
far as the construction of the statute is involved, is con-
fined to an attack upon that decision as unsound. The
criticisms of the brief are especially directed to a quota-
tion from the opinion in that case as follows: "To hold
that five days' notice should be given for a wrong com-
mitted by the city itself one hour, or one day, before the
occurrence of the accident, and of which the city already
has absolute knowledge, would be in the highest degree
ludicrous and attribute to the lawmaker a want of fore-
sight, insight and comprehension which we cannot do.

It is true that the statute provides that the city shall be 'absolutely exempt from liability' unless such notice be given, but we must give a reasonable construction to the language of the act. The law never requires an impossible thing. The section presupposes that the defect in the public way must have existed at least five days, otherwise the notice would be impossible." The criticism is that, when the language of the statute is plain and unambiguous, it is not the province of the court to say that the lawmakers acted without foresight and comprehension, if they are acting within their constitutional limitations. The language criticised, however, assumes that it is proper and necessary to ascertain the real intention of the legislature, and that in determining that intention the court will give such construction to the statute as will not attribute to the lawmaker a want of foresight and comprehension, and we are entirely satisfied with the language there used.

Is it true that no liability exists unless provided by statute? There is no express statute making the city liable for damages caused by defects in the street. If it can be said that the liability arises from statute, it is by implication only, and this implication is not derived from the language of the statute or any of its express provisions. It is not derived from a construction of the statute itself. It is rather an implication which the common law raises from the fact that the legislature has conferred certain privileges upon the municipality. When the legislature confers powers upon the city for the advantage of the city itself to enable it to hold its property and to conduct such affairs as are for the benefit of the city in its corporate capacity as distinguished from those powers which relate to its governmental functions, such privileges and benefits carry with them duties and liabilities of the same character as are imposed upon private corporations or individuals, who enjoy corresponding privileges. It is quite generally held that when the city accepts such powers and privileges it accepts them with

the conditions that the common law imposes.    The law
requires that in using such powers and privileges the
city, like individuals, must so use them as not to violate
the rights of others, and in doing so must use ordinary
care and diligence to avoid injuries to others.    This duty
is not derived from the construction of the language of
the statute, but is derived from the obligations which by
the common law accompany such powers and privileges.
It seems, therefore, that to say that the liabilitiy is
created by statute, without qualification, may be mis-
leading.    In *Goddard v. City of Lincoln,* 69 Neb. 594, it
was said: "As the liability in such cases must rest on
some express or implied provision of the statute, it is
clear that the legislature may place such limitations upon
it as it may deem proper, or, for that matter, take it away
entirely."    We have seen in what sense the liability is
implied from the provisions of the statute, but what is
meant by saying that the statute may take away the
liability entirely?    It was not necessary in that case to
say, and we do not think that the language used must
be construed as meaning, that the legislature can confer
powers and privileges of the nature above suggested and
at the same time relieve the municipality of all liability
for their improper exercise.    The defendant insists that
it can, and to explain this position the following illustra-
tion is given: "Suppose the city dug a sewer trench and
left it open, and the first night a man fell in and was
injured.    Would the city be liable?"    The question is
answered in the negative, and it is argued that to hold
that the city would be liable in such case assumes "that
somehow the city was liable until the legislature passed
a law exempting the city from liability; whereas, on the
contrary, there was no liability until the legislature so
declared."

Can it be possible that the legislature is competent to
authorize a city or any private corporation or individual,
in the transaction of its own affairs and for its own bene-
fit, to make a trench across a public thoroughfare and to

take no precautions against dangers to the traveling
public, and at the same time relieve the city from any
liability for the consequence of such an act? It would
seem more reasonable to say that, if the legislature in-
tended to relieve the city from incurring liability for such
damages, it should withdraw from the city the power and
privilege of constructing such a trench, and that when it
is said that the legislature might relieve a city from all
liability it is inferred that in order to do so it must pre-
vent the city from engaging in such transactions.

There is no doubt that if the legislature keeps within
its constitutional right, and the purpose and meaning of
the act are clear and unambiguous, "the court should ac-
cept the law as it is." When it is found that the attempted
legislation is not prohibited by constitutional limitations
of the legislative power, the next thing for the courts to
do is to find out, if they can, the intention of the legisla-
ture, and when that is determined and declared the duty
of the courts in that regard is performed. It is not the
duty nor the privilege of courts to change the meaning of
constitutional acts of the legislature, nor to modify or
enlarge their scope and purpose. The meaning of the
legislature must be derived from the language used, all
valid legislation on the given subject being considered
and construed together. What did the lawmakers intend
to do? If there was some apparent evil to be remedied,
what remedy did the legislature propose to provide?

The defendant assumes that the object of the statute
in question was to relieve the city of some part of the
burden of claims for damages of this character. Can it
be that the intention was to establish an arbitrary line
of division between claims against the city for the pur-
pose, without regard to merit or justice, of lessening the
number of claims? Does the written notice required by
statute become an essential element of the claim against
the city? Was it intended that persons from other parts
of the state, who had no means of knowing whether dan-
gerous pitfalls existed or whether notice had been filed

with the city clerk, should be discriminated against? Of course, it will not be presumed that the legislature intended such a result.

The city must act by its agents, and if it sends an agent to do a specified act, as to open a trench across a thoroughfare, that act, when done, is, of course, the act of the city. To provide that a notice must be lodged with the clerk stating that the trench has been opened, and is not being guarded, and that the stranger who falls into the trench within five days after such statement is filed has no remedy, but one who falls into the trench after the five days have expired may recover damages, will no doubt have the effect to limit the number of claims against the city; and so would a provision that under such circumstances none but an inhabitant of the city might recover, or one of light complexion. If the legislature could grant the power to a city to construct such work and allow it to so remain without guarding the public in any way, for a period of five days, and exempt the city from liability for damages, which is at least doubtful, it would not be presumed to have intended to do so, if a different and more reasonable purpose can be derived from the statute.

In another part of the brief a better reason for this legislation is suggested. "What was the purpose of requiring this notice? Clearly, to direct the attention of the proper officers of the city to the fact that at a particular point on one of the public highways of the city there exists at the time a condition in the public highway which renders the street unsafe and dangerous for public travel, a condition likely to result in injury to some traveler on the highway. The purpose of this notice was to enable the city to prevent accidents by repairing or guarding the defect." This is undoubtedly the real purpose of the legislation. The city had been held liable in some cases in which it was uncertain whether the officers of the city had notice of the defect complained of. It was regarded as a question of fact for the jury to determine whether they knew, or the circumstances were such that with reason-

able diligence they must and ought to have known, of the dangerous condition of the streets. And having apparently more regard for the financial interests of the city than for the rights of strangers or danger to the citizens, the legislature purposed to change this. There should no longer be any liability on the part of the city unless its officers actually knew of the defect. It was not presumed that the officers of the city would themselves create the defect. The statute was not necessary nor intended for such a contingency. To so construe the statute would be to hold that the intention of the legislature was to bar a proportion of the claims against the city without regard to the justice of the claims or the conditions under which they arose.

If we suppose that the statute applies in a case like this, what should the notice contain? If prior to this accident the written notice specified in the statute had been filed with the clerk, it must have stated that the original construction of the sewer was negligent, and that the earth had settled over the sewer so that there was danger of the paving giving way, and that the defect was hidden so that ordinary passengers would not discover it. If such a notice had been given, the city authorities must be presumed, pursuant to such notice, to have done precisely what they did do in this case. It appears that for several years prior to this accident the authorities recognized the deficiency in the construction of the sewer and made many attempts, more or less effective, to remedy the defect. Can the defendant now deny liability because such notice was not given? It is generally held that where written notice is required it may be waived by the party entitled to it. The fact that the city knew of the condition of the street and recognized its duty to remedy it, and attempted, however ineffectively, to do so, is equivalent to notice and amounts to a waiver of notice, so that the city cannot now say it had no notice of the defect.

In *Goddard v. City of Lincoln*, 69 Neb. 594, it was held that the plaintiff could not recover because the written

notice required by section 110 of the act governing cities
of the first class, which is substantially the same as the
statute herein considered, was not given.  In that case a
sidewalk had become badly and dangerously out of repair.
"The boards of the same * * * being loose * * *
and one or two boards being entirely removed therefrom,
so that said sidewalk was, at said time and place, in an
unsafe and dangerous condition."  When a walk or a
street through wear or some accidental cause becomes in
an unsafe condition, the city authorities will perform this
duty if the necessity of so doing comes to their knowledge.
This at least the statute assumes, and its object and effect
is to make certain that the officers of the city shall have
such knowledge.  The statute requiring notice of the de-
fect to be in writing filed with the clerk is analogous to
the statute of frauds.  It guards against mistake or per-
jury in doubtful cases.  The proof that notice has been
given must be in writing.  If the act causing the danger-
ous condition is done by the officers of the city themselves,
the knowledge of its existence is inherent in the act.  To
suppose that the legislature intended that they must be
notified of their own act is to question the judgment and
motives of the lawmakers.  The defect was not caused
by the city, and from its nature must have been without
the knowledge of its officers.  In such case knowledge
must in some way be conveyed to the city officials, and
the statutory method of accomplishing this had not been
followed.  The decision in that case was clearly right, but
it furnishes no precedent for a case like this.

In *Schmidt v. City of Fremont,* 70 Neb. 577, the construc-
tion of section 39, art. III, ch. 13, Comp. St. 1901, was in-
volved.  That section provided that no city shall be liable
for damages arising from defective sidewalks, unless writ-
ten notice of the accident or injury complained of was given
within 30 days after its occurrence, and it was held that
the plaintiff could not recover because such notice had
not been given.  The object of that statute was to enable
the city officials to properly investigate the nature and

validity of the claim presented. It devolved a duty upon the claimant himself, and made that duty a part of his procedure in establishing his claim, one of the necessary steps in enforcing his remedy analogous to the three days' notice required by the statute of forcible entry and detainer. The case is distinguishable from the one under consideration. Statutes somewhat similar to ours have been considered by other courts, although we have not observed any decisions involving the precise point here presented.

In *City of Houston v. Isaacks*, 3 S. W. 693 (68 Tex. 116), the law as applied in that state is stated in the first paragraph of the syllabus as follows: "A provision in a city charter exempting the corporation from liability to any person for damages caused by a street being out of repair through the gross negligence of the corporation, unless the same shall have remained so for 10 days after special notice in writing to the mayor or street commissioner, does not apply where the city having put a contractor to work upon the street, and after he had commenced work, and made an excavation in the street, rendering it unsafe for travel, discharged him, and left the work in an unfinished condition. A person injured in consequence of such defect in the street may recover of the city though he has not given the 10 days' notice. The city having by its own procurement made the street unsafe, and knowingly left it so, cannot escape behind the charter provisions, as it might if the defect had resulted from any extrinsic cause." In the opinion the court suggests a doubt as to the power of the legislature to exempt a city from all liability in such cases: "The provision is a most stringent one, and its practical effect would seem to be to exempt the city from all liability for such defects as ordinarily accrue. But we cannot say that it should not be enforced in a case to which it is applicable. We are of opinion, however, that it does not apply to the case before us. There may be some reason in requiring notice to the city authorities of a defect accruing from ordinary causes; such as the action of floods, the use of the street

by the public, or it may be said from any cause except by the action of the city itself. But in the present case the city put a contractor to work upon the street, stipulating to have an excavation made which was to be filled with gravel, and, after the work had been begun and the street had been rendered unsafe for travel, discharged the contractor, and left the work in an unfinished condition."

The charter of the city of Fond du Lac, Wisconsin, provided that "no action shall be maintained against the city for injuries caused by any defect in the condition of the street, unless notice in writing, signed by the injured party, shall have been given to the proper persons within five days of the injury," and it was held that the requirement of notice had no application when the plaintiff "was injured through his horse taking fright at a large wooden roller, which had been used in the care of the streets, and left standing therein by the servants of the defendant." The Wisconsin court also suggested a doubt as to the power of the legislature to exempt from liability in such cases. Mr. Chief Justice Cole in the opinion said: "I should have great doubt about the validity of the provision requiring the notice to be *given within five days of the injury,* even if the liability of the city in the case was wholly statutory. The time fixed is unreasonably short, and in many cases could not be complied with. The injured person might be unconscious, or so seriously hurt that he could not state 'the place where, and the time when, such injury was received, and the nature of the same,' within that period; so that the remedy given is coupled with an impossible condition. Such a provision is unreasonable and unjust. * * * It is an arbitrary and unreasonable provision, which professes to give a remedy for an injury, but annexes to it a condition which in many cases cannot be complied with." *Hughes v. City of Fond du Lac,* 73 Wis. 380, 41 N. W. 407.

In *Still v. City of Houston,* 66 S. W. 76 (27 Tex. Civ. App. 447) the ground of the decision is stated in the third paragraph of the syllabus as follows: "A city charter pro-

vided that the corporation should not be liable for any injuries sustained owing to the defective condition of sidewalks, etc., unless such condition should have continued for 10 days after notice to the mayor or certain committees. A city sold certain fences on property through which a street was opened, and authorized the purchaser to remove them, which he did to the knowledge of the city, but he failed to fill a hole left where a fence post was removed, and subsequently a pedestrian stepped into such hole, it being just beside the sidewalk. *Held* that, though no notice of such hole had been given, the charter provision did not protect the city, inasmuch as the act of the purchaser was, under the circumstances, to be considered the act of the city, and the provision had no application to such case." In the opinion the court said: "This action was taken by the very officers to whom the charter required the notice to be given. The city is not sought to be held liable for any injury caused by a defect accruing from any extrinsic cause, but for having by its own procurement made the street unsafe and knowingly left it in that condition."

The charter of the city of Springfield, Illinois, provided that a city should not be liable for damages arising from the bad condition of the streets by reason of the neglect of the proper officers to repair the same, until notice was given and reasonable time given to make the repairs. The action was for damages for injuries sustained by falling into a sewer which was being made in one of the streets of the city. While the statute did not purport to exempt the city from liability in all cases where the notice had not been given, but only in case the proper officer had negligently failed to repair the defect, still that court expressed a doubt as to the propriety of such a clause. "Laying out of view all consideration of the propriety of such a clause, and its inconsistency with other provisions of the charter, and with established rules of law, it is very manifest it cannot apply to this case. * * * The injury complained of was not the result of a defective

street, which a traveler upon it might have noticed and reported, but for permitting the sewer in it to be excavated in a manner hazardous to the safety of the people." *City of Springfield v. Le Claire,* 49 Ill. 476.

In *City of Dallas v. McAllister,* 39 S. W. (Tex.) 173, a sewer on one of the principal streets had caved in, leaving a dangerous depression up and down the street ten or twelve feet long. It had been there about two months. The driver of a wagon was going around this broken place in the paving where the street appeared to be solid, when the sewer caved in under the wagon, causing the injuries complained of. It was held that, since the testimony tended to show a connection between the original break and the one through which the injury occurred in such a manner as to indicate that in repairing the former the cause of the latter would have become known, the city was liable for the damages, notwithstanding a clause in the charter which provided that no action should be maintained against the city for injuries caused from streets being out of repair from the gross negligence of the city, unless the same shall have remained so for ten days after special notice in writing to the mayor or city engineer, and no such notice had been given. The court said: "The evidence, however, shows that the entire sewer was defective and dangerous from the place of the accident down to the original caving in, a distance of 15 or 20 feet, for it is testified to that, when the wagon went down, the ground caved all the way down to the other cavity. It is therefore a reasonable inference that the sewer was in an unsafe condition all the way down, and that notice of this would have followed ordinary care in repairing the first break; hence, the city must be taken to have had knowledge of it, and be chargeable with the consequences."

In *Adams v. City of Oshkosh,* 36 N. W. 614 (71 Wis. 49), the case is stated in the syllabus as follows: "Plaintiff's horse was killed on a principal street of a muncipal corporation by running, in the night-time, upon a pile of gravel and stones placed there by an employee of the city

while repairing the street. In an action to recover the value of the horse, *held,* that the provision of the charter 'that the city shall not be liable to or for any damages arising or growing out of any sidewalks, streets, drains, sewers, gutters, ditches, or bridges in said city being in a defective or damaged condition, or out of repair, unless it be shown that previous to the happening of the same one of the aldermen of the ward in which the same is located had knowledge thereof,' etc., does not apply to obstructions placed in the street by an employee of the city while in its employ." The court said in the opinion: "There is no claim that either of the aldermen of the ward had actual notice of the obstruction in the street, nor that it had existed for three weeks; so that, if the statue applies to an obstruction placed in the street by an employee of the city while engaged in repairing said street, the plaintiff did not make out a case. After a careful consideration of the statute, we think it was not the intent of the legislature to cover a case of this kind. In the case at bar the aldermen of the ward, in discharging a duty imposed upon them by law, were in fact engaged in repairing the street in question, and one of their employees negligently permitted the obstruction to be placed in and remain in said street. We think, in a case of this kind, the act of the employee while engaged in his employment must be considered as the act of the aldermen of the ward, and that the city, through the action of its ward officer, permitted the obstruction to be placed in the street and to remain there. It cannot be supposed that the legislature intended to release the city from damages caused by the action of its officers in repairing its streets, when its employees create the obstruction, because such officers had no actual notice of the obstruction. In such case the acts of the employees are the acts of the officers, and their knowledge must be construed to be the knowledge of the employer. This would be the rule in every other case, and we cannot think the legislature intended to alter so just a rule in favor of the city."

In *MacMullen v. City of Middletown*, 187 N. Y. 37, it was held that the requirement in a city charter that written notice should be given of the existence of snow or ice on sidewalks is constitutional. The court said: "The charter created a liability for a neglect of the duty to remove snow and ice from the streets and sidewalks and gave a remedy by action.    *    *    *    The requirement is the expression of the legislative will that the notice of the defective condition of the public way, which has occasioned the injury sustained, shall be of so certain a character as to charge the corporation with actual knowledge. It was always the legal rule that notice should be brought home to the corporation, or facts from which notice was reasonably inferable. In order that something more certain than constructive notice should be relied upon, provisions were inserted in municipal charters that 'actual notice' of the alleged defect must be shown." This was perhaps all that it was necessary to say in deciding the case. In the absence of any statute upon the subject, the city would not be required to remove the snow as fast as it fell upon the walk. It would only be liable if it knew that the walk had become dangerous by reason of the accumulation of snow and ice and failed to protect the public by causing it to be removed. No one could doubt the power of the legislature to prescribe the manner of giving such notice and the method of proof that the city officials had such knowledge when notice was necessary; but the court discussed at great length the question whether removing snow and ice from walks is a governmental function, and concludes that it is, contrary to the view of most other courts, and especially of this court as expressed in *Burke v. City of South Omaha*, 79 Neb. 793, and *Tewksbury v. City of Lincoln*, 84 Neb. 571. The language used in the opinion in *MacMullen v. City of Middletown, supra,* which appears to be in conflict with our conclusion in this case, is based upon the proposition that such duties are governmental functions. The reasoning upon this question in *Tewksbury v. City of Lin-*

*coln, supra,* and other authorities there cited, preclude this court from accepting such a view.

In *Parsons v. City and County of San Francisco,* 23 Cal. 463, it was held that the city was not liable in consequence of its streets or highways being out of repair. The statute exempting cities from such liability was held to be constitutional, but this is put expressly upon the ground that the statute afforded the injured parties a complete remedy. It made the person or persons on whom the law may have imposed the obligation to repair such streets, and also the officer or officers through whose official negligence such defects remained unrepaired, jointly and severally liable to the parties injured. This was thought to be a complete remedy, and if the officer by whose negligence the injury was caused and his official bonds are presumed to be responsible, the remedy would appear to be complete.

In *Williams v. City of Galveston,* 41 Tex. Civ. App. 63, it was held that the city was not liable for damages caused by a defective bridge. The charter provision exempting the city from such liability was upheld. This opinion also placed the decision upon the theory that the repair of bridges is a governmental function. It is said in the opinion: "The counties in the state are held exempt from liability for the negligent construction or maintenance of public highways, and the act in question does no more than place the city of Galveston upon a plane with the counties."

If this court were not already fully committed to the doctrine that in the performance of such duties the cities are not exercising governmental functions, it might be thought necessary to further discuss this question.

It was complained in the brief that there were some errors in the instruction of the court to the jury, but these supposed errors are not discussed at length. For the most part objections made to the instructions are derived from principles already discussed, and it does not appear to be advisable to prolong this opinion after hav-

ing devoted so much space to the main question involved. We have found no errors in the instruction requiring a reversal of the judgment.

The judgment of the district court is

AFFIRMED.

ROSE, J., concurring.

I concur in the affirmance on the grounds that the statute requiring notice does not apply to the defects of which complaint is made in plaintiff's petition.

ROOT, J., dissenting.

I am unable to concur in the majority opinion. The courts are not in accord concerning the principle controlling the liability of a municipal corporation for personal injuries inflicted by reason of its defective streets. In *City of Omaha v. Olmstead*, 5 Neb. 446, we held that the city, in accepting its charter and the privileges therein bestowed, by implication promised the state to perform the duties thereby cast upon the municipality, and individuals injured by the city's failure to keep its promise had a right of action against the city. "The acceptance of these privileges is considered as raising an implied promise on the part of the city to perform its corporate duties; and this implied agreement made with the sovereign power inures to the benefit of every individual interested in the proper performance of such duties." 5 Neb. 446, *supra*. In *Goodrich v. University Place*, 80 Neb. 774, the law is reexamined, and the liability of a city for personal injuries is again based upon its implied contract with the sovereign state. Judge Dillon suggests there is no contractual relation between the state and a municipality in those cases where the city may not reject, but is compelled to accept, its charter. 2 Dillon, Municipal Corporations (4th ed.) sec. 967. Judge Dillon admits, however, that the reason given by us in *City of Omaha v. Olmstead* and *Goodrich v. University Place*, *supra*, for holding a city liable in personal injury cases,

sustains many decisions imposing a like liability upon municipalities. If the law may raise an implied promise by a city and fasten a liability upon it for a failure to keep that promise because the city has acted under a charter it is powerless to reject, it seems arbitrary and unjust to deny the city the benefit of those immunities specifically granted the city therein.

The defendant's charter (Comp. St. 1907, ch. 12a, sec. 207) provides that it "shall be absolutely exempt from liability for damages or injuries suffered or sustained by reason of defective public ways or the sidewalks," unless notice in writing of the defect shall have been filed with the city clerk at least five days before the accident occurred. And, further, "in the absence of such notice, so filed, the city shall not be liable." If, as suggested in the majority opinion, the legislature does not have the power to absolutely exempt a city from liability to respond in damages to those injured by reason of its defective streets, or may not lawfully provide that such a liability shall not arise unless the city shall have had notice in writing of the defect before such accident occurs, the statute is void if construed according to its terms. No principle of law is cited to sustain the suggestion made in the majority opinion. No adjudicated case has been referred to, nor do I believe one can be found, to sustain the proposition that the legislature may not, by the enactment of a statute uniform as to the class of cities upon which it operates, exempt a municipality from all liability because of personal injuries inflicted by reason of its defective streets or alleys. On the other hand, statutes granting such an exemption have been sustained by courts of last resort. *O'Harra v. City of Portland*, 3 Or. 525; *Rankin v. Buckman*, 9 Or. 253; *Wilmington v. Ewing*, 45 L. R. A. (Del.) 79; *Williams v. City of Galveston*, 41 Tex. Civ. App. 63.

In the opinion filed in the last cited case, the court did say, as suggested in the majority opinion, that the effect of the statute is to reduce the city's liability to that of a

county. The majority opinion is also correct in stating that we hold that a city in controlling its streets exercises corporate and not governmental functions, but that question was not involved in the Texas case. The supreme court of Texas is in harmony with our decisions upon that subject. The real point determined in *Williams v. City of Galveston, supra,* was that the legislature had the power to relieve a city from the liability theretofore imposed upon it by judicial construction. Having the power to grant complete immunity, it follows as a matter of course that the legislature may extend a qualified exemption to the city. We so held in *Goddard v. City of Lincoln,* 69 Neb. 594, where a statute identical in terms with the one considered in the case at bar was construed and upheld. That case did not involve the mere determination of the power of the legislature to relieve the city from liability in cases resting upon imputed notice to the city that a sidewalk was defective. The plaintiff in the *Goddard* case alleged in his petition that the sidewalk at the point where his intestate was injured was unsafe and dangerous by reason of the absence of boards which had formed a part of the way, and that the defendant city had "full knowledge" of said defect for a long time prior to the accident. The defendant's demurrer to the petition was sustained, and we affirmed the judgment of the district court. The constitutionality of the statute was raised, considered and determined in the *Goddard* case, and we held that, although the city had knowledge for a long time prior to the accident of the defect responsible for the injury, the defendant was not liable because the statutory written notice had not been given. See, also, *McNally v. City of Cohoes,* 53 Hun (N. Y.) 202; *MacMullen v. City of Middletown,* 187 N. Y. 37. But it is said that a fair consideration of all the other legislation upon the subject, in connection with the statute concerning notice and the apparent evil to be remedied thereby, will convince the impartial, judicial mind that the statute should not be literally construed. There is no ambiguity in the

statute under consideration; it is not inconsistent with any other provision in the city charter, nor does it conflict with any other legislative act. Under these circumstances the court should hesitate before applying rules of construction to read exceptions into the written law inconsistent with the context and tenor thereof. *Morrill v. Taylor*, 6 Neb. 236; *State v. Liedtke*, 9 Neb. 468; *State v. Moore*, 45 Neb. 12; *Stoppert v. Nierle*, 45 Neb. 105.

It is argued, however, that in *Tewksbury v. City of Lincoln*, 84 Neb. 571, we departed from the literal meaning of the Lincoln charter, and for that reason are not bound by the language employed by the legislature in the statute under consideration in the instant case. *Tewksbury v. City of Lincoln* was a hard case, and if it is authority for the majority opinion should be overruled; but I am not willing to concede so much. In that case, while employees of the city of Lincoln were engaged for their master in flushing a sewer during cold weather, they negligently sprayed a street crossing so that it became slippery and dangerous. The plaintiff, while those servants were at work and by reason of such negligence, slipped, fell and was injured. We said: "The law never requires an impossible thing. The section presupposes that the defect in the public way must have existed at least five days, otherwise the notice would be impossible." A well-recognized rule of statutory construction was thereby applied. 2 Sutherland (Lewis), Statutory Construction (2d ed.), sec. 516. The instant suit presents no such feature, and the rule ought not to be applied. It is suggested, however, that where the defect has been caused by the city it has knowledge of the fact, waives the written notice, and the statute does not apply. This argument proceeds upon the assumption that the legislature did not intend to release the city where it had knowledge of the defect. We held to the contrary in *Goddard v. City of Lincoln, supra*. Furthermore, a municipal corporation is without perception, intellect or memory, and all knowledge acquired or notice received by it must be

by imputation from the knowledge of or notice to some of its officers or agents. In the case at bar the defendant's negligence is inferred from the alleged fact that in 1887, 20 years before the plaintiff was injured, the municipality failed to properly tamp the dirt on each side of and above a sewer 24 inches in diameter laid 20 feet beneath the surface of a street in said city; that subsequently the dirt settled in said trench, and the city paved the street so as to conceal the open trench. The defendant's liability, however, is predicated solely upon the alleged failure of the city to properly tamp or otherwise settle the dirt in said trench in 1887. That there may be no uncertainty upon this point I quote the eighth paragraph of the district court's charge to the jury: "You are instructed, as a matter of law, the plaintiff cannot recover in this case unless the city was negligent in the construction of said sewer; that is to say, failed to use ordinary care and caution in tamping or ramming the dirt when refilling said sewer. And if the plaintiff has failed to satisfy you by a preponderance of the evidence that the city so failed, or if you find the evidence evenly balanced, then you should find for the defendant."

The judicial mind may logically reason and understand that whatever knowledge the city's agents or officers may have acquired in 1887 concerning the negligent tamping of earth in said sewer was by some process communicated to a conscious municipal mind and continued within the memory and understanding of that intangible person for two decades, but the layman may be excused for refusing to accept that logic. The mere fact that courts do thus reason is a satisfactory explanation for the enactment of the statute under consideration. Many cases are brought against a city for personal injuries where the doctrine of *respondeat superior* is invoked to induce and justify a judgment. Where any considerable period of time exists between the happening of the alleged negligence and the injury to the plaintiff, there is fully as much probability that the city will be wrongfully mulcted in damages, as in

those cases where imputed notice to the city of a defect in its streets caused by the negligence of third persons, or the action of the elements, is the basis for the demand. In the case at bar the defendant's negligence, if established, is demonstrated by the testimony of a member of the defendant's city council in 1887, who testified, in substance, that once or twice a day while the contractor was filling said trench he noticed the methods employed by the workmen, and observed that the specifications in the contract between the contractor and the city were being ignored. This evidence was supplemented by expert testimony. There is proof to the effect that at intervals subsequent to the construction of said sewer, and up to within about a year before the accident, the city had refilled parts of said trench and repaired the pavement along the line of the sewer, but the testimony further shows that the soil in Omaha is of a peculiar texture, and when used to fill excavations will settle, notwithstanding all known ordinary methods may be used to make it firm. An impartial consideration of the facts and the well-known inclination of juries to accept slight proof to support a finding of notice to a municipality of defects in its streets leads to the belief that the legislature intended to make the city's liability depend upon the statutory written notice in all cases where a defective street is the proximate cause of an injury.

Judge Gray, in *MacMullen v. City of Middletown*, 187 N. Y. 37, gives a logical reason for statutes like the one considered in the instant case: "The novelty of the case, in the feature of the statutory requirement that a written notice shall have been given, is explained in the legislative purpose to make that certain, which before was, often, uncertain. The fact of knowledge should no longer be dependent upon inferences from the evidence of circumstances; nor the liability of the municipality be left to a determination reached upon an indulgent construction of the legal rule as to actual notice." I do not understand the opinion in the cited case to hold, as suggested

in the majority opinion, that the city was exempt from liability because the removal of snow and ice from sidewalks is a governmental function; the court recognizes that the defendant, in the absence of legislation upon the subject, would be liable for its neglect in such a case.  I again take the liberty of quoting from the opinion: "Where the charter of a municipal corporation is silent upon the subject, the legislature may be regarded as having left its liability to depend upon the general rule that, if the power conferred relates to the accomplishment of corporate purposes, for the corporate benefit, the corporation is as a private company and there attaches the same responsibility as there would to a legal individual, if possessing like powers and franchises.  But where the charter voices the will of the legislature, upon the subject of the responsibility of the political agency of the state to answer to the complaint of a private individual, it announces a rule of conduct which is to govern the relations of the municipality with its citizens.  No right is thereby taken away; but relative rights are defined, which are to be binding upon those who choose to remain residents of the municipality."

The opinion further demonstrates that in the distribution through charters to municipalities of governmental powers and administrative duties, there is no constitutional limitation upon the regulative power of the legislature.  The legislature may specifically impose a liability, in cases like the one at bar, may attach conditions thereto, leave the citizen to the judge-made law upon the subject, or exempt the municipality from all financial responsibility.  The legislature has prescribed conditions precedent to the defendant's liability for its defective streets, which shield it from the plaintiff's claim.  If the statute works a hardship to the citizen, the legislature should remedy the evil by an amendment to the law.  We should not destroy the statute under the guise of construing its meaning.

The judgment of the district court should be reversed and the cause remanded for further proceedings.

LETTON, J., dissenting.

The facts in this case do not bring it within the rule of the *Tewksbury* case, where the injury was the immediate and direct result of the negligence of the city's servants. In the present case the city is held liable for a latent defect in its streets, caused by a contractor 20 years before the accident.

In my opinion, the city is not liable in the absence of the statutory notice.